UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NICOLE LEE DUNN,

                       Plaintiff,

v.

COMM COL. RICHARD S. ALLEN, New
York State Police Bureau of Criminal
Investigation; and Inv. TIMOTHY RYAN,
NYSP Investigator,

                       Defendants.
_____

5:23-CV-0731
(BKS/ML)

APPEARANCES:                                      OF COUNSEL:

NICOLE LEE DUNN
   Plaintiff, *Pro Se*
8418 Theodolite Drive #722
Baldwinsville, New York 13027

MIROSLAV LOVRIC, United States Magistrate Judge

## <u>REPORT and RECOMMENDATION</u>

## I.      BACKGROUND

Plaintiff Nicole Lee Dunn ("Plaintiff") commenced this action on June 16, 2023, by the

filing of a Complaint together with a motion for leave to proceed *in forma pauperis* ("IFP").

(Dkt. Nos. 1, 2.)  On September 19, 2023, the undersigned issued an Order and Report-

Recommendation that granted Plaintiff's IFP application and recommended that her Complaint

be dismissed with leave to amend.  (Dkt. No. 4.)  On October 2, 2023, Plaintiff filed (1)

objections to the Report and Recommendation portion of the undersigned's Order and Report-

Recommendation dated September 19, 2023, and (2) an "Amended Claim."  (Dkt. No. 5.)  On

October 26, 2023, in light of Plaintiff's filing, Chief United States District Judge Brenda K. Sannes (1) denied as moot the undersigned's Report and Recommendation and Plaintiff's objections, and (2) referred the Amended Complaint to the undersigned for review.  (Dkt. No. 6.)

The Amended Complaint is brought against Defendants Comm Col. Richard S. Allen and Inv. Timothy Ryan ("Defendants") who are employed by the New York State Police.  (Dkt. No. 5 at 3-4.)  The Amended Complaint is difficult to decipher and fails to provide sufficient factual information for the Court to review or for Defendants to have notice of the claims against them. (*See generally* Dkt. No. 5.)  Generally, the Amended Complaint appears to allege that for several years, Plaintiff has sought from Defendants additional information about the investigation surrounding the death of her mother, Salena Bennett, but has not received a satisfactory response from Defendants.  (*Id*.)  The Amended Complaint does not list any causes of action and does not appear to be seeking any relief.  (*Id*.)

## II.    LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources.  *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp*., 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even

when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## III.   ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe her pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Amended Complaint with this principle in mind, I recommend that all causes of action be dismissed.

Plaintiff's Amended Complaint—much like her Complaint—is largely incomprehensible and should be dismissed for two reasons.

First, Rule 8 of the Fed. R. Civ. P. requires a "short and plain statement" of a claim, showing that "the pleader is entitled to relief." *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (quoting Fed. R. Civ. P. 8(a)). Each statement must be "simple, concise, and direct,' and must give 'fair notice of the claims asserted." *Whitfield*, 763 F. App'x at 107 (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). A pleading must also contain "a demand for the relief sought[.]" *Id*. "A complaint may be dismissed under Rule 8 if it is 'so confused, ambiguous, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Id*. Moreover, Rule 10 of the Fed. R. Civ. P. provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances[.]" Fed. R. Civ. P. 10(b). Rule 10's purpose is to "provide an easy mode of identification for

referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, 22-CV-1248,

2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (Stewart, M.J.) (citation omitted), *report and*

*recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023) (D'Agostino, J.).  A

complaint that does not comply with these Rules "presents far too heavy a burden in terms of

defendants' duty to shape a comprehensive defense and provides no meaningful basis for the

Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the

court.  *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, C.J.).

Notwithstanding the fact that Plaintiff was on notice of these requirements before the

filing of the Amended Complaint (Dkt. No. 4 at 5-6), the Amended Complaint wholly fails to

provide fair notice of the claims she attempts to assert, does not include numbered paragraphs,

and fails to include a demand for the relief sought.  (*See generally* Dkt. No. 5 at 3-9.)  Given its

lack of clarity, the Court recommends dismissal of the Amended Complaint because it is not

acceptable under Rules 8 and 10 of the Fed. R. Civ. P. and because Plaintiff's Section 1983

claims against Defendants are entirely unclear.[1]

Second, to the extent that Plaintiff's claims seek to compel Defendants—as law

enforcement officers—to prosecute suspected criminal activity or investigate accusations of

criminal activity, she fails to assert a cognizable claim.  *See Morrow v. Vanderwerff*, 19-CV-

0555, 2019 WL 13455972, at *7 (N.D.N.Y. July 23, 2019) (Hurd, J.) (citing *Houston v.*

*Collerman*, 16-CV-1009, 2016 WL 6267968, at *11 (N.D.N.Y. Oct. 26, 2016) (Sannes, J.) ("[I]t

is well-settled that a private citizen does not have a constitutional right to bring a criminal

complaint against another individual."); *Banks v. Annucci*, 48 F. Supp. 3d 394, 414-15

---

[1]    In addition, as set forth in the undersigned's Order and Report-Recommendation dated
September 19, 2023, Plaintiff's claims are likely untimely.  (Dkt. No. 4 at 6-7.)

(N.D.N.Y. 2013) (Hurd, J.) ("[I]nmates do not enjoy a constitutional right to an investigation of any kind by government officials."); *Pine v. Seally*, 09-CV-1198, 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) (same) (Baxter, M.J)) (holding that the plaintiff "does not have a constitutional right to bring criminal charges" and that "the refusal to investigate accusations of criminal misconduct does not give rise to a cognizable Section 1983 claim."); *Porter v. Goord*, 04-CV-0485, 2004 WL 2271383, at *3 (W.D.N.Y. Oct. 5, 2004) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973)) ("a private citizen is not constitutionally entitled to a criminal investigation or the pursuit of a criminal prosecution"); *see also Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 382-83 (2d Cir. 1973) (finding no authority, in civil rights action, to compel state prosecutors to investigate and prosecute violation of New York state criminal law).

For each of these reasons, I recommend that Plaintiff's Amended Complaint be dismissed.

## IV.    OPPORTUNITY TO REPLEAD

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to replead at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to replead is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is

not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[2]

Although this Court has serious doubts about whether Plaintiff can further amend the Amended Complaint to assert an actionable claim against Defendants, given Plaintiff's *pro se* status and that Plaintiff has not had the benefit of the assigned District Judge's analysis before amending, out of an abundance of caution, I recommend that Plaintiff's Amended Complaint be dismissed without prejudice and with leave to amend.

If Plaintiff chooses to avail herself of an opportunity to amend, such a second amended pleading must set forth a short and plain statement of the facts on which she relies to support any legal claims asserted.  Fed. R. Civ. P. 8(a).  In addition, the second amended complaint must include allegations reflecting how the individuals named as Defendants are involved in the allegedly unlawful activity.  Finally, Plaintiff is informed that any second amended complaint will replace the existing Amended Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

**ACCORDINGLY**, it is

---

[2]      *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** the Amended Complaint (Dkt. No. 5) pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Report and Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[3]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: December  21 , 2023
      Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[3]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[4]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Case 5:23-cv-00731-BKS-ML    Document 7    Filed 12/21/23    Page 9 of 64

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

William PFLAUM, Individually and as a Citizen, Resident and Taxpayer of Town of Stuyvesant, Plaintiff,

v.

TOWN OF STUYVESANT, COLUMBIA CTY., N.Y.; and Valerie Bertram, Individually and as Supervisor of Town of Stuyvesant, Defendants.

1:11-CV-0335 (GTS/DJS)

|

Signed 03/02/2016

**Attorneys and Law Firms**

WILLIAM PFLAUM, Plaintiff, Pro Se [1], 3 Rybka Road, Box 40, Stuyvesant Falls, NY 12174.

BRYAN D. RICHMOND, ESQ., THOMAS J. MORTATI, ESQ., BURKE, SCOLAMIERO, MORTATI & HURD, LLP, Attorneys for Defendants, 9 Washington Square, Suite 201, P.O. Box 15085, Albany, NY 12212-5085.

## **DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this civil rights action filed by William Pflaum ("Plaintiff") against the Town of Stuyvesant ("Town") and Valerie Bertram, Town Supervisor ("Bertram") (collectively, "Defendants"), is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 59.) For the reasons set forth below, Defendants' motion is granted.

## **I. RELEVANT BACKGROUND**

### **A. Plaintiff's Complaint**

As a result of the Court's prior decisions (Dkt. Nos. 17, 26), Plaintiff's sole remaining claim in this action is his First Amendment retaliation claim. More specifically, as articulated in his Complaint (which was drafted by Plaintiff, *pro se*, and therefore must be construed with special solicitude), that claim alleges three separate ways he was retaliated against for publicly criticizing Town officials. [2]

First, Plaintiff alleges that, in retaliation for filing charges of ethical violations against Defendant Bertram, she (a) "collaborated with and supported" the Town's Fire Chief to deny and/or threaten to deny fire protection to Plaintiff, (b) "supported and encouraged" various Town employees to "illegal[ly] revo[ke] ... Plaintiff's permit to operate his business," and (c) "supported and encouraged" the Town Assessor's "campaign to intimidate Plaintiff by linking [his] political speech [with his] real estate assessment." (Dkt. No. 1, ¶¶ 20-23, 116 [Pl.'s Compl.].)

Second, Plaintiff alleges that, in retaliation for writing columns on his Internet blog regarding corruption among the Town's public officials, the Town filed false criminal charges against him. (*Id.*, ¶ 116.)

Third, and finally, Plaintiff alleges that, in retaliation for criticizing Bertram, the Town Assessor, and the Town, the Town Assessor used his authority to raise taxes in order to intimidate Plaintiff into silence. (*Id.*, ¶¶ 23, 39, 47, 116.)

### **B. Defendants' Motion for Summary Judgment**

**\*2** In their motion for summary judgment, Defendants request the dismissal of Plaintiff's Complaint in its entirety. (Dkt. No. 59.) In support of their motion, Defendants make the following four arguments. First, Defendants argue that there was no adverse action against Plaintiff in that there was no actual chilling of Plaintiff's First Amendment speech or any other damages. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law].)

Second, Defendants argue that, in any event, any such adverse action was not motivated or substantially caused by Plaintiff's First Amendment speech. (*Id.* at 5-6.)

Third, in the alternative, Defendants argue that Bertram was not personally involved in any deprivation of fire protection services to Plaintiff. (*Id.* at 5, 8-10.)

Fourth, and finally, Defendants argue that Bertram is entitled to qualified immunity. (*Id.*)

### **C. Plaintiff's Opposition Memorandum of Law**

Generally construed, Plaintiff makes five arguments in opposition to Defendants' motion. First, Plaintiff argues that he engaged in protected speech by creating an Internet blog on which he publicly criticized Town officials and exposed

their illegal activities. (Dkt. No. 65, at 3 [Pl.'s Opp'n Mem. of Law].)

Second, Plaintiff argues that Town officials took adverse action against him by issuing noise violations against him with respect to loud dog barking on his property, retaining special prosecutors to pursue civil suits and criminal charges against him, encouraging harassment and extra-judicial threats against him, and treating him differently from other residents. (*Id.* at 4-5.) As a result, Plaintiff argues that he suffered a chilling effect on his blogging as well as monetary damages due to the expense required to oppose the Town's retaliatory activities. (*Id.* at 6-8.)

Third, Plaintiff argues that the timing of these adverse actions, i.e., that they began after he created his blog, establishes the causal connection between his protected speech and the adverse actions. (*Id.* at 5.)

Fourth, Plaintiff argues that Bertram is not entitled to qualified immunity because it was not objectively reasonable to believe that her actions did not violate Plaintiff's First Amendment rights. (*Id.* at 5-6.) According to Plaintiff, these actions consisted of (1) threatening to fire the Town's Dog Control Officer if he did not serve Plaintiff with a criminal charge related to dog barking, and (2) retaining special prosecutors to pursue this charge against Plaintiff without first obtaining the Town's approval. (*Id.* at 9.)

Fifth, Plaintiff argues that municipal liability extends to the Town because of the actions of Bertram, the Town's supervisor, and her position as a policymaker. (*Id.* at 8-9.)

Finally, the Court notes that Plaintiff spends considerable time in his opposition papers arguing the merits of issues not raised by Defendants in their motion. For example, Plaintiff discusses the Town's denial of his FOIL requests, the Town's failure to respond appropriately to alleged vandalism of his property, and the sufficiency of the evidence that led to the issuance of noise violations related to dog barking. (*See generally id.*, at 3-4, 6-9; Dkt. No. 67, ¶¶ 4, 14, 25, 27, 36, 56-107 [Pl.'s Decl.].)

### D. Defendants' Reply Memorandum of Law

In reply to Plaintiff's opposition memorandum of law, Defendants make two arguments. First, Defendants argue that, because Plaintiff has not complied with Local Rule 7.1(a)(3) in his response to their statement of material facts, their

statement of material facts should be deemed admitted. (Dkt. No. 74, at 2-6 [Defs.' Reply Mem. of Law].)

**\*3** Second, Defendants argue that the record is devoid of any admissible evidence that Bertram was personally involved in an alleged deprivation of fire protection services with regard to Plaintiff's residence. (*Id.* at 6-7.) Furthermore, Defendants argue that Plaintiff cannot demonstrate that any adverse action was taken because he was never actually deprived of fire protection services and his subjective belief that the fire department may not respond to a fire at his residence is insufficient to create a genuine dispute of fact. (*Id.* at 7-8.)

### E. Statement of Material Facts

#### 1. Plaintiff's Failure to Comply with N.D.N.Y. Local Rule 7.1

Before reciting the material facts of this case, the Court must address Plaintiff's response to Defendant's Rule 7.1 Statement of Material Facts. Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires a party moving for summary judgment to submit a statement of material facts supported by specific citations to the record where those facts are established. N.D.N.Y. L.R. 7.1(a)(3). The non-moving party's subsequent response must mirror the moving party's statement of material facts by (1) admitting and/or denying each of the moving party's factual assertions in matching numbered paragraphs and (2) supporting any denials with specific citations to the record where the factual issues arise. *Id.* Importantly, "[t]he Court shall deem admitted any properly supported facts set forth in the [moving party's] Statement of Material Facts that the [non-moving] party does not specifically controvert." *Id.*

This Court's "Local Rule requirements are not empty formalities." *Bombard v. Gen. Motors Corp.*, 238 F. Supp. 2d 464, 467 (N.D.N.Y. 2002) (Munson, J.) (stating that "[t]he courts of the Northern District have adhered to a strict application of Local Rule 7.1[a][3]'s requirement on summary judgment motions"); *accord*, *Cross v. Potter*, 09-CV-1293, 2013 WL 1149525, at *3 (N.D.N.Y. Mar. 19, 2013) (McAvoy, J.). Indeed, the underlying purpose of this rule "is to assist the court in framing the issues and determining whether there exist any triable issues of fact that would preclude the entry of summary judgment." *Youngblood v. Glasser*, 10-CV-1430, 2012 WL 4051846, at *4 (N.D.N.Y. Aug. 22, 2012) (Peebles, M.J.); *see also* 🗂 *N.Y. Teamsters Conference Pension &*

*Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005) (noting that "Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties'") (quoting 🔖 *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 [2d Cir. 2001]).

In the present case, Plaintiff has failed to respond appropriately to Defendants' Rule 7.1 Statement of Material Facts. Specifically, Plaintiff has failed to admit and/or deny each of Defendants' factual assertions in matching numbered paragraphs. Indeed, Defendants' Rule 7.1 Statement contains 71 paragraphs of factual assertions, while Plaintiff's 7.1 Response contains only 11 paragraphs. (*Compare* Dkt. No. 62 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 66 [Pl.'s Rule 7.1 Response].) Moreover, many of Plaintiff's responses are conclusory in nature and/or contain legal arguments. The Court notes that, when he responded to Defendants' motion, Plaintiff was represented by counsel. Accordingly, the Court will accept the factual assertions in Defendants' 7.1 Statement as true to the extent that the evidence in the record supports these facts. *See Davis v. Cumberland Farms, Inc.*, 10-CV-0480, 2013 WL 375477, at *4 (N.D.N.Y. Jan. 29, 2013) (Scullin, J.) (accepting the defendant's statement of material facts as true where plaintiff neither admitted nor denied defendant's factual assertions); 🔖 *Aktas v. JMC Dev. Co., Inc.*, 877 F. Supp. 2d 1, 5 n.3 (N.D.N.Y. 2012) (D'Agostino, J.) (accepting the third-party defendants' statement of material facts as true because the defendant/third-party plaintiff failed to respond to it in accordance with Local Rule 7.1[a][3] ).

### 2. Undisputed Material Facts

**\*4** For purposes of this motion, the undisputed material facts are as follows. Gerald Ennis has served as the Zoning Enforcement Officer for the Town of Stuyvesant continuously since 2003. (Dkt. No. 62, ¶ 43 [Defs.' Rule 7.1 Statement].) In this capacity, Mr. Ennis issued Plaintiff a Class 2 Home Occupation Permit in August, 2009. (*Id.*, ¶ 44.) Under this permit, "[n]o unusual appearances, noise, vibration, smoke, dust, odors, heat, glare or electrical disturbances that exceed those normally produced by a resident shall be permitted." (*Id.*, ¶ 45.) Following the issuance of this permit, Mr. Ennis received numerous noise complaints from Plaintiff's neighbors in regard to increasingly loud barking

from dogs on Plaintiff's property. (*Id.*, ¶¶ 46-47.) Following an investigation into these complaints, Mr. Ennis concluded that Plaintiff's "home dog kennel which housed up to 50 dogs at a time was producing noise levels that exceeded those normally produced by a resident and, accordingly, [Plaintiff] was in violation of his Permit." (*Id.*, ¶ 48.)

On December 7, 2009, Mr. Ennis issued Plaintiff a notice of violation, which informed Plaintiff that the Town had received several complaints about the noise coming from his property and directed Plaintiff to remedy the violation by December 23, 2009. (*Id.*, ¶ 49.) Subsequently, Plaintiff contacted Mr. Ennis and requested that his phone number be given to those who had complained with instructions that they contact Plaintiff directly when there are noise issues so he can rectify any problems. (*Id.*, ¶ 50.) However, after a few months had passed, Plaintiff stopped answering his neighbors' phone calls; and, as a result, his neighbors made new complaints to Mr. Ennis. (*Id.*, ¶ 51.) After receiving these complaints and personally observing the loud noise emanating from Plaintiff's property, Mr. Ennis issued a second notice of violation to Plaintiff on April 26, 2010. (*Id.*, ¶¶ 52-53.) In response, Plaintiff advised Mr. Ennis that he would erect a sound barrier to remedy the issue. (*Id.*, ¶ 54.)

According to Mr. Ennis, he waited "some time" for Plaintiff to erect, or apply for a permit to construct, a sound barrier but neither action was taken. (*Id.*, ¶¶ 55-56.) After continuing to receive noise complaints, Mr. Ennis issued a third notice of violation to Plaintiff on August 9, 2010. (*Id.*, ¶ 56.) On the same day, Mr. Ennis met with Bertram and the Town Attorney to discuss the noise issue on Plaintiff's property. (*Id.*, ¶ 57.) The Town Attorney advised Bertram that Mr. Ennis had the authority to revoke Plaintiff's home occupation permit if he determined that Plaintiff was in violation of the permit's conditions. (*Id.*, ¶ 37.) As a result, Bertram advised Mr. Ennis that he may revoke Plaintiff's permit if he determined that the permit's conditions had been violated. (*Id.*, ¶ 38.) Later that same day (August 9, 2010), Mr. Ennis made the decision to revoke Plaintiff's permit and notified Plaintiff of that fact. (*Id.*, ¶¶ 39, 59.) Neither Plaintiff's statements concerning various issues in the Town nor his postings on various Internet sites had any bearing on the decision to revoke Plaintiff's permit. (*Id.*, ¶¶ 40, 61.)

Plaintiff testified at his deposition that the basis for his claim that he was deprived of fire protection services is that, "in 2011, or perhaps late 2010," a local fire department chief, Steve Montie, posted an online statement that Plaintiff should

Case 5:23-cv-00731-BKS-ML    Document 7    Filed 12/21/23    Page 12 of 64

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

move out of town. (*Id.*, ¶ 14.) Plaintiff testified that the post was made in response to one of his earlier posts on a local town Internet forum; in Plaintiff's post, he had complained of alleged ethical violations committed by Bertram. (*Id.*, ¶¶ 15-16.) The alleged post by Mr. Montie states in its entirety as follows:

> William,
>
> How much more of this are you going to do ? ? ? ? You are wasting more tax payer dollars than its worth. Man up correct your problems and move on, or better yet move out.
>
> S

(*Id.*, ¶ 19.) The author of this post is not identified by name but only by the email address stuyvesantchief@fairpoint.net; and, as indicated above, the post is signed only as "S." (*Id.*, ¶ 18.)

**\*5** Plaintiff testified that the statements in the alleged post amounted to a threatened denial of fire department services because "the fire chief told me I should move out of town, which makes me wonder if there was a fire at my house would he come." (*Id.*, ¶ 20.) However, Plaintiff testified that no one has ever told him that the fire department would not respond if there was a fire at his house. (*Id.*, ¶ 22.) In addition, Plaintiff testified that there are two distinct fire departments in the Town, Stuyvesant Company 1 and Stuyvesant Company 2, which divide their responses to emergency calls in the Town geographically. (*Id.*, ¶ 23.) Steve Montie is the Chief of Stuyvesant Company 1 and a different chief controls Company 2. (*Id.*, ¶ 25.) Plaintiff's property is located in the geographic area covered by Company 2. (*Id.*, ¶ 24.) According to Bertram, she did not "in any way direct any fire department to deprive or threaten to deprive [Plaintiff] of fire services." (*Id.*, ¶ 33.)

Finally, Plaintiff testified that there was "never" a time that he did not publicize or speak out against some issues based upon any actions by the Town and the alleged efforts to silence him did not work. (*Id.*, ¶ 26.) In fact, following the alleged actions by the Town, Plaintiff did more blogging and increased his "political activities against the Town." (*Id.*, ¶ 27.) With respect to his business, Plaintiff testified that, despite losing his business permit in August, 2010, he continued to operate his business uninterrupted without a permit as he had before it was issued in 2009. (*Id.*, ¶ 29.) Accordingly, there was

no interruption to Plaintiff's business as a result of his home business permit being revoked. (*Id.*, ¶¶ 28, 30.)

## II. STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2). As the Supreme Court has famously explained, "[the non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movign party. *Anderson*, 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(c), (e). Where the non-movant fails to deny the factual assertions contained in the movant's Rule 7.1 Statement of Material Facts in matching numbered paragraphs supported by a citation to admissible record evidence (as required by Local Rule 7.1[a][3] of the Court's Local Rules of Practice), the court may not rely solely on the movant's Rule 7.1 Statement; rather, the court must be

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

Case 5:23-cv-00731-BKS-ML    Document 7    Filed 12/21/23    Page 13 of 64

satisfied that the citations to evidence in the record support the movant's assertions. *See* Giannullo v. City of N.Y., 322 F.3d 139, 143, n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

## III. ANALYSIS

### A. Whether Plaintiff Suffered an Adverse Action

**\*6** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendants' memorandum of law and reply memorandum of law. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law]; Dkt. No. 74, at 6-8 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following two points.

As this Court noted in its prior decisions, in order to state a claim for retaliation under the First Amendment, "a plaintiff must prove (1) his conduct was protected by the First Amendment, (2) the defendants' actions were motivated or substantially caused by the exercise of that right, and (3) defendants' actions effectively 'chilled' the exercise of plaintiff's First Amendment right." *Pflaum*, 937 F. Supp. 2d at 303 (citing *Dillon v. Morano*, 497 F.3d 247, 251 [2d Cir. 2007]). "In cases 'involving criticism of public officials by private citizens,' the Second Circuit has generally 'impose[d] an actual chill requirement for First Amendment retaliation claims[,]' i.e., a requirement that the plaintiff allege and ultimately prove an 'actual chill' of his First Amendment rights." *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 221 (N.D.N.Y. 2012) (D'Agostino, J.) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 [2d Cir. 2004]). "To establish this element, it is not enough for the plaintiff simply to show that he changed his behavior in some way; he must show that the defendant intended to, and did, prevent or deter him from exercising his rights under the First Amendment." *Hafez*, 894 F. Supp. 2d at 221. "However, 'where the retaliation is alleged to have caused an injury separate from any chilling effect, such as a job loss or demotion, an allegation as to a chilling effect is not necessary to state a claim.'" *Id.* (quoting *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 [E.D.N.Y. 2009]); *see also Brink v. Muscente*, 11-CV-4306, 2013 WL 5366371, at \*7 (S.D.N.Y. Sept. 25, 2013) (noting that, in private citizen cases, "various forms of concrete harm have been substituted for the 'actual chilling' requirement").

First, it is clear from Plaintiff's deposition testimony that there was no actual chilling of his protected speech as a result of Defendants' actions. As discussed above, Plaintiff admitted that he increased his political activities and continued to publicize his opinions against the Town in the face of its alleged efforts to silence him. "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see also Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (finding no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper through which he criticized the village government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (finding no chilling effect where, after the filing of a lawsuit, the plaintiff continued to write criticizing editorials in the same manner as before the lawsuit).

Second, to the extent that Plaintiff argues that he perceived the online post regarding the loss of fire protection as a real threat, he is still required to show that his perception was objectively reasonable, i.e., "that the defendant[s'] actions had some actual, non-speculative chilling effect." *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002); *see also Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"). Plaintiff's subjective belief that the online post constituted a real threat, without more, is insufficient to demonstrate an actual chilling effect on his First Amendment rights. Indeed, as discussed above in Point I.E.2. of this Decision and Order, Plaintiff admitted that no one had told him that the fire department would not respond if there was a fire at his house. Moreover, a different fire chief than the one who allegedly authored the online post is responsible for responding to fire calls in the location of Plaintiff's residence.

### B. Whether There Was a Causal Connection Between Plaintiff's Speech and Any Adverse Action

**\*7** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

To establish the second element of his First Amendment retaliation claim, "plaintiff must provide specific proof of defendants' improper motivation with either circumstantial or direct evidence." *Media All., Inc. v. Mirch*, 09-CV-0659, 2011 WL 3328532, at \*5 (N.D.N.Y. Aug.

2, 2011) (D'Agostino, J.) (citing *Curley*, 285 F.3d at 73). "Circumstantial evidence includes close temporal proximity between plaintiff's speech and the alleged retaliatory act." *Mirch*, 2011 WL 3328532, at *5.

"Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 [1977]). "Plaintiff has the initial burden of showing that an improper motive played a substantial part in defendant's action. The burden then shifts to defendant to show it would have taken exactly the same action absent the improper motive." *Scott*, 344 F.3d at 288.

### 1. Revocation of Plaintiff's Business Permit

In denying Defendants' underlying motion to dismiss Plaintiff's First Amendment claim, this Court held that Plaintiff had sufficiently alleged a concrete harm through the loss of his business permit, and consequently, the loss of business income, as a result of Defendants' alleged retaliatory actions. *Pflaum*, 937 F. Supp. 2d at 308. Having carefully reviewed the record, the Court finds that Plaintiff has failed to create a genuine dispute of material fact regarding Defendants' alleged improper motive. Specifically, with respect to the revocation of his business permit, the undisputed facts establish that the Town received complaints regarding the noise emanating from Plaintiff's property. Plaintiff was given two [3] noise violations over the course of approximately one year and ample opportunity to rectify the problem. (Dkt. No. 67, Attach. 5.) Because the noise problem and complaints continued, Mr. Ennis revoked Plaintiff's permit. [4] Even if Plaintiff were able to establish that an improper motive played a part in this decision, it is clear to the Court that, under these circumstances, the revocation would have still occurred. Indeed, Plaintiff challenged the decision to revoke his permit in appeals made to the Town's Zoning Board of Appeals and in two actions filed in New York State Supreme Court. (Dkt. No. 67, Attachs. 1 & 2.) Although Plaintiff was successful in his state court actions, those decisions were based, in part, upon the Town's failure to follow proper procedure, rather than the merits of the Town's decision. (*Id.*)

### 2. Criminal Charges

**\*8** Plaintiff has also failed to demonstrate an improper motive with respect to his claim that he received false criminal charges in retaliation for comments on his website about corruption among public officials. Plaintiff relies on the temporal proximity of these charges with a meeting he had with Bertram and his filing of an Article 78 petition in New York State Supreme Court. More specifically, Plaintiff argues that he began an Internet blog on or about January 1, 2011, and in that blog reported on what he perceived to be the illegal activities of Town officials. (Dkt. No. 67, ¶ 15 [Pl.'s Decl.].)

For example, on January 1, 2011, Plaintiff wrote about the alleged inflation of billable time by the Town Attorney that was spent on work paid for by the Town. (*Id.* at 65:8-11.) Around the same time, Plaintiff met with Bertram to discuss his discovery of specific instances of corruption by public officials, including the alleged inflation of billable work by the Town Attorney. (Dkt. No. 59, Attach. 7, at 62:13-15; 64:9-15 [Pl.'s Dep. Tr.].) On January 15, 2011, a few days after this meeting occurred, Plaintiff was issued a criminal summons for the offense of "habitual loud barking," in violation of N.Y. Local Law § 1. (*Id.* at 61:19-22; Dkt. No. 68, Attach. 7 [Criminal Summons]; Dkt. No. 67, ¶ 15 [Pl.'s Decl.].) Plaintiff testified at his deposition that the Town Attorney went to great lengths to research the Local Law that he was charged under and assisted one of Plaintiff's neighbors in drafting an affidavit upon which the criminal summons was based. (Dkt. No. 59, Attach. 7, at 65:17-21 [Pl.'s Dep. Tr.]; Dkt. No. 67, ¶ 107 [Pl.'s Decl.].) Plaintiff argues that he is the first Town resident to be charged under this section of the Local Law. (Dkt. No. 67, ¶¶ 100, 106 [Pl.'s Decl.].) Finally, Plaintiff argues that Bertram retained outside counsel to pursue this charge against him, which was later dismissed. (Dkt. No. 67, ¶¶ 5, 19, 21 [Pl.'s Decl.]; Dkt. No. 59, Attach. 7, at 57:16-18 [Pl.'s Dep. Tr.].)

Thereafter, in October 2011, Plaintiff filed an Article 78 petition in New York State Supreme Court challenging the Town's denial of Plaintiff's FOIL requests. (Dkt. No. 59, Attach. 7, at 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff sought disclosure of the information in the FOIL requests to substantiate his belief that Town officials were engaging in illegal activities. (Dkt. No. 67, ¶¶ 43-44 [Pl.'s Decl.].) One week after commencing that action, Plaintiff received a second criminal summons for the same offense related to loud

Case 5:23-cv-00731-BKS-ML    Document 7    Filed 12/21/23    Page 15 of 64

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

dog barking. (Dkt. No. 68, Attach. 7 [Appearance Ticket]; Dkt. No. 59, Attach. 7, at 56:16-19; 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff testified that he had "almost no dogs" on his property in October 2011. (Dkt. No. 59, Attach. 7, at 67:8-10 [Pl.'s Dep. Tr.].) According to Plaintiff, that charge was neither dismissed nor withdrawn, but "vanished." (*Id.*, at 57:19-58:9.)

While Plaintiff's allegations may plausibly suggest that an improper motive played a role in the charges brought against him, Defendants have submitted admissible record evidence that establishes otherwise. (Dkt. No. 59, Attach. 17.) Specifically, the criminal information in question is signed by one of Plaintiff's neighbors, Frederick Platt, and states, in part, that "my complaint is that the dogs at Glencadia Dog Camp exhibit ongoing habitual barking/howling at any given time of day or night. This has been an issue since the Fall of 2009." (*Id.*) Furthermore, an affidavit filed by Wes Powell, the Town's Dog Control Officer, states that he received repeated complaints from Mr. Platt throughout 2010, culminating in the noise complaint that served as the basis for the criminal charge. (Dkt. No. 59, Attach. 16, ¶¶ 3-5 [Powell Aff.].) Mr. Powell states that the complaint was written by Mr. Platt in his presence and that no Town official directed Mr. Powell to serve Plaintiff with the criminal summons. (*Id.*, ¶¶ 7-10.)

**\*9** Conversely, Plaintiff has not submitted any admissible record evidence supporting his claim that the Town Attorney (who is not a party) played any role in the charge being filed against him or that he is the only resident to have ever been charged under this section of the Local Law. Similarly, Plaintiff's contention that the Town pressured Mr. Platt to file a complaint against him (Dkt. No. 67, ¶ 7[Pl.'s Decl.] ) is unsubstantiated. While the timing of the charge may appear suspicious, the Town cannot control when its residents decide to file a complaint and, in light of the record evidence demonstrating that there was a preexisting noise problem on Plaintiff's property, the complaint is unsurprising. Moreover, the fact that Plaintiff *believes* the Town shored up its criminal charge against him is of little, if any, materiality. Finally, because the second charge seemingly "vanished," no documentation or evidence (other than the appearance ticket itself) has been submitted with respect to that charge. In any event, because the charge was never prosecuted, Plaintiff has failed to support his claim that he suffered any harm. Accordingly, the Court finds that Plaintiff has failed to meet his burden in demonstrating an improper motive with respect to this charge.

### 3. Town Assessor Gleason

Plaintiff claims that Town Assessor Howard Gleason (also not a party) threatened to raise his property taxes for engaging in political activities when Mr. Gleason hand delivered a letter to Plaintiff before a public meeting. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason]; Dkt. No. 67, ¶ 29 [Pl.'s Decl.].) The only evidence submitted with respect to this claim is not the original letter from Mr. Gleason to Plaintiff but letter correspondence from Plaintiff to Mr. Gleason. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason].) Plaintiff's letter to Mr. Gleason, dated October 5, 2010, states that Plaintiff interpreted Mr. Gleason's attempt to speak with him about tax filings before a town hall meeting as threatening in nature due to the "timing and manner of the interaction." (*Id.*) This is because Plaintiff "had announced [his] intention to call for a referendum frequently and in many forums prior to appearing for the meeting." (*Id.*) Furthermore, Plaintiff requested that, in order to "avoid the impression that you coordinate your tax-related activities with other people in government in order to intimidate free speech, please do not present important information to me in such an information [sic] and unverifiable way." (*Id.*)

However, Mr. Gleason's response to Plaintiff's letter suggests that their interaction was not meant as a threat to raise Plaintiff's taxes or "was in any way politically motivated." (Dkt. No. 69, Attach. 18, at 4 [Letter from Pl. to Gleason].) More specifically, Mr. Gleason explains that he needed to re-assess Plaintiff's property in light of the fact that Plaintiff was now running a kennel (business) on his property and decided to hand deliver his letter knowing that Plaintiff would be present for the town hall meeting. (*Id.*) Moreover, Mr. Gleason reassured Plaintiff that politics do not dictate how he performs his job and promised that all future communication will be transmitted through mail rather than in-person. (*Id.*)

Plaintiff has failed to submit any additional evidence with respect to his tax assessment, that his taxes were improperly raised or that Mr. Gleason acted with a retaliatory animus.[5] Similarly, no evidence has been submitted to substantiate Plaintiff's claim that Bertram encouraged Mr. Gleason to use his authority as Town Assessor to intimidate Plaintiff. In sum, Plaintiff has wholly failed to satisfy his burden demonstrating that he suffered harm as a result of any action taken by Mr. Gleason and that Mr. Gleason acted with an improper motive.

**\*10** For all of these reasons, the Court finds that Plaintiff has failed to create a genuine dispute of material fact with respect to his First Amendment claim. Because the Court has reached this conclusion, it need not, and does not, consider the merits of Defendant Bertram's alternative qualified immunity argument.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 59) is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of the Defendants and close this case.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 865296

---

## Footnotes

1   Although Plaintiff is currently proceeding *pro se*, the Court notes that he had counsel when preparing his response to Defendant's motion for summary judgment. Accordingly, no need exists to construe Plaintiff's response with the special solicitude ordinarily afforded to *pro se* litigants.

2   The Court notes that, while it did not previously (i.e., in its prior decisions) liberally construe Plaintiff's retaliation claim as arising under three separate theories, it does so now. The Court further notes that it has the power to address these two additional theories for each of two alternative reasons: (1) because Defendants moved for dismissal of Plaintiff's retaliation claim in its entirety, Plaintiff has had sufficient notice and an opportunity to be heard with respect to the two theories in question; and (2) in any event, even if Plaintiff cannot be said to have had such notice and an opportunity to be heard, he filed his Complaint *pro se* and the Court finds the two theories to be so lacking in arguable merit as to be frivolous, *see Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (recognizing that district court has power to *sua sponte* dismiss *pro se* complaint based on frivolousness notwithstanding fact that plaintiff has paid statutory filing fee).

3   As discussed above, Plaintiff was actually given three noise violations. However, because his permit was revoked on the same day that he received the third violation, the Court will disregard the third violation for purposes of this analysis.

4   The Court notes that Plaintiff spends considerable time in his opposition papers disputing the sufficiency of the evidence and procedures that were followed that led to the issuance of noise violations. (*See generally* Dkt. No. 67, ¶¶ 56-95 [Pl.'s Decl.].) However, this Court is not the proper forum for that dispute. Furthermore, to the extent that the New York Supreme Court observed that there appeared "to have been a disproportionate amount of time and money spent on [the noise violation] notice," and that the records did not "reveal a real issue with dog-barking," those observations are not binding upon this Court. (Dkt. No. 67, Attach. 2, at 6.) Setting aside the fact that the observations constitute dicta, Defendants have submitted admissible record evidence demonstrating that Mr. Ennis acted upon complaints made to him by residents of the Town, which Plaintiff has failed to properly dispute.

5   For example, with regard to this lack of additional evidence regarding retaliatory animus, Plaintiff has failed to adduce admissible record evidence establishing that, even assuming Mr. Gleason knew of Plaintiff's intent to engage in protected speech, the so-called "manner of the interaction" by Mr. Gleason (i.e., the hand delivery of the letter) was in fact unusual for Mr. Gleason given the date of the letter and the date of the public meeting. Moreover, Plaintiff has failed to adduce admissible record evidence that the so-called "timing ...

Case 5:23-cv-00731-BKS-ML    Document 7    Filed 12/21/23    Page 17 of 64

**Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)**

of the interaction" is significant, given his rather constant exercise of his First Amendment rights during the time in question.

---

**End of Document**                                        © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 17517312
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,

v.

Jonathan ROBBINS, et al., Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed December 8, 2022

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, Plaintiff, Pro Se, Anderson, IN 46013.

### REPORT-RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has forwarded for review what has been docketed as a civil complaint filed by Plaintiff. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee but has submitted an application to proceed *in forma pauperis* ("IFP"), Dkt. No. 2, which the Court has granted. [1]

### I. SUFFICIENCY OF THE COMPLAINT

#### A. Governing Legal Standard

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2] Thus, even if a plaintiff meets the financial criteria to commence an action *in forma pauperis*, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action *in forma pauperis. See id.*

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (*per curiam*); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate *pro se* prisoner complaints).

In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (*per curiam*), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

**\*2** Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556

Case 5:23-cv-00731-BKS-ML    Document 7    Filed 12/21/23    Page 19 of 64

Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)

U.S. at 678 (citing 🚩 *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

### B. Analysis of the Complaint

A court's initial review of a complaint under 🚩 § 1915(e) must encompass the applicable standards of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz,* 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> **(b)    Paragraphs;    Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Sandler v. Capanna,* 1992 WL 392597, at *3 (E.D. Pa. Dec. 17, 1992).

A complaint that fails to comply with basic pleading requirements presents too heavy a burden for defendants to craft a defense "and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed. 🚩 *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

Plaintiff's Complaint clearly does not satisfy these requirements. The nature of the Complaint is unclear. The Complaint recites a wide variety of federal statutes and case law, but a thorough review of the main Complaint and the numerous attachments does not provide clarity as to what federal claim Plaintiff seeks to pursue in this Court. It is unclear what relationship the individuals identified by Plaintiff as Defendants have to Plaintiff and how he alleges they violated his rights.

Given its lack of clarity, the Complaint is clearly subject to dismissal. "[A] court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart,* 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting 🚩 *Branum v. Clark,* 927 F.2d 698, 704-05 (2d Cir. 1991)). Accordingly, the Court recommends that the Complaint be dismissed, but that Plaintiff be afforded an opportunity to amend.

**\*3** The Court advises Plaintiff that should he be permitted to amend his Complaint, any amended pleading she submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint, **which shall supersede and replace in its entirety the previous Complaint filed by Plaintiff**, must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**. Thus, if Plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date, including the year, on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the

Case 5:23-cv-00731-BKS-ML    Document 7    Filed 12/21/23    Page 20 of 64

Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)

nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

Plaintiff is further cautioned that no portion of his prior Complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging that the named defendant violated a law, he should specifically refer to such law.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED with leave to amend**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17517312

## Footnotes

1    Plaintiff has also moved for leave to file electronically. Dkt. No. 3. Given the recommended disposition of this case, that Motion is denied with leave to renew if Plaintiff files a complaint that survives review under section 1915.

2    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

3    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

---

**End of Document**                          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2023 Thomson Reuters. No claim to original U.S. Government Works.    3

2023 WL 3170384
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,

v.

Jonathan ROBBINS, Jean-Max Bellerive,
Josue Pierre-Louis, Garry Conille, Jean-Claude
Theogene, Barthelemy Anteno, Kwasi Amoako-
Attah, and Victor (Ito) Bisono Haza, Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed May 1, 2023

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, 4326 South Scatterfield
Road, Suite 153, Anderson, Indiana 46013, Plaintiff, Pro Se.

# ORDER

Mae A. D'Agostino, United States District Judge:

**\*1** On November 22, 2022, *pro se* Plaintiff Manetirony
Clervrain ("Plaintiff") filed a complaint against Defendants
consisting of 70 pages of forms and documents, *see* Dkt. No.
1, "recit[ing] a wide variety of federal statutes and case law,"
Dkt. No. 7 at 5, and around two hundred pages of attachments.
*See* Dkt. Nos. 1-1, 1-5, 1-6. On the same day, Plaintiff moved
for leave to proceed *in forma pauperis* ("IFP"), *see* Dkt. No.
2, and to obtain an ECF login and password. *See* Dkt. No. 3.

On December 8, 2022, Magistrate Judge Daniel J. Stewart
granted Plaintiff's motion to proceed IFP. *See* Dkt.
No. 6. Additionally, Magistrate Judge Stewart issued a
Report-Recommendation and Order recommending that the
complaint be dismissed with leave to amend. *See* Dkt.
No. 7. Plaintiff has not filed an objection to the Report-
Recommendation and Order.

When a party declines to file objections to a magistrate judge's
report-recommendation or files "[g]eneral or conclusory
objections or objections which merely recite the same
arguments [presented] to the magistrate judge," the district
court reviews those recommendations for clear error. *O'Diah
v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*1 (N.D.N.Y.
Mar. 16, 2011) (citations and footnote omitted); *see also*

*McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y.
2007). After the appropriate review, "the court may accept,
reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge." 28
U.S.C. § 636(b)(1).

"[I]n a *pro se* case, the court must view the submissions
by a more lenient standard than that accorded to 'formal
pleadings drafted by lawyers.' " *Govan v. Campbell*, 289
F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v.
Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).
The Second Circuit has held that the court is obligated to
" 'make reasonable allowances to protect *pro se* litigants' "
from inadvertently forfeiting legal rights merely because they
lack a legal education. *Govan*, 289 F. Supp. 2d at 295
(quoting *Taguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Having reviewed the December 8, 2022 Report-
Recommendation and Order, Plaintiff's complaint and the
applicable law, the Court finds that Magistrate Judge Stewart
correctly determined that the complaint should be dismissed.
The complaint is largely incomprehensible and suffers from
several deficiencies. Rule 8(a) of the Federal Rules of Civil
Procedure provides that a pleading must contain "a short
and plain statement of the claim showing that the pleader is
entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff's complaint
is neither short nor plain. *See* Dkt. No. 1. As currently
drafted, and even with the leniency given to a *pro se* litigant's
pleadings, Plaintiff failed to meet pleading standards such
that the Court is unable to meaningfully analyze whether
Plaintiff can allege any colorable claim against Defendants.
*See Canning v. Hofmann*, No. 1:15-CV-0493, 2015 WL
6690170, \*5 (N.D.N.Y. Nov. 2, 2015) ("[H]aving found
that none of the allegations in Plaintiff's meandering and
indecipherable Complaint raise a cognizable cause of action,
the Court concludes that the Complaint fails to state a claim
upon which relief may be granted and is subject to dismissal")

(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**\*2** Finally, the Court agrees with Magistrate Judge Stewart
that Plaintiff should be granted an opportunity to amend out
of deference to Plaintiff's *pro se* status. *See Nielsen
v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (" 'Generally,
leave to amend should be freely given, and a *pro se*
litigant in particular should be afforded every reasonable
opportunity to demonstrate that he has a valid claim' ")

(quotation omitted). Should Plaintiff choose to amend the complaint, the Court urges Plaintiff to review Magistrate Judge Stewart's suggestions in the Report-Recommendation and Order thoroughly. *See* Dkt. No. 7 at 4-6.

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation and Order (Dkt. No. 7) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED with leave to amend**; and the Court further

**ORDERS** that Plaintiff shall file his amended complaint within **thirty (30) days** of the date of this Order; and the Court further

**ORDERS** that, if Plaintiff fails to file an amended complaint within thirty (30) days of the date of this Order, the Clerk of the Court shall enter judgment in Defendants' favor and close this case without further order from this Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2023 WL 3170384

---

End of Document

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:23-cv-00731-BKS-ML    Document 7    Filed 12/21/23    Page 23 of 64

NEB MORROW, III, Plaintiff, v. L. VANDERWERFF, Law..., Not Reported in Fed....

2019 WL 13455972
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

NEB MORROW, III, Plaintiff,

v.

L. VANDERWERFF, Law Library Supervisor,
THOMAS TANEA, Law Library Administrator,
HAROLD GRAHAM, Superintendent; Auburn
Correctional Facility, BARBARA OST, Law
Library Coordinator, STEPHEN MAHER, Deputy
Commissioner, KEVIN P. BRUEN, Deputy
Commissioner, DANIEL F. MARTUSCELLO,
III, Deputy Commissioner, JOSEPH BELLNIER,
Deputy Commissioner, JEFF MCKOY, Deputy
Commissioner, and CARL J. KOENIGSMANN,
M.D.; Deputy Commissioner, Defendants.

9:19-CV-0555 (DNH/DJS)
|
Filed 07/23/2019

**Attorneys and Law Firms**

APPEARANCES:

NEB MORROW III, Plaintiff, Pro Se, 10-A-6112, Sing Sing
Correctional Facility, 354 Hunter Street, Ossining, NY 10562

DAVID N. HURD United States District Judge

**DECISION AND ORDER**

**I. INTRODUCTION**

 **\*1** This is an initial review of a civil rights complaint
submitted by pro se plaintiff Neb Morrow III ("Morrow" or
"plaintiff") asserting claims pursuant to 42 U.S.C. § 1983
("Section 1983"). Dkt. No. 1 ("Compl."). Plaintiff has also
filed an application to proceed in forma pauperis ("IFP"). Dkt.
No. 5 ("IFP Application"). [1] Plaintiff, who is incarcerated at
Sing Sing Correctional Facility, has not paid the filing fee for
this action.

**II. IFP APPLICATION**
Upon review, Morrow's completed and signed IFP
Application (Dkt. No. 5) demonstrates sufficient economic

need. See 28 U.S.C. § 1915(a)(2). Plaintiff has also filed
the inmate authorization form required in this District. Dkt.
No. 6. Accordingly, plaintiff's IFP Application is granted.

**III. SUFFICIENCY OF THE COMPLAINT**

**A. Governing Legal Standard**

Section 1915(e) directs that, when a plaintiff seeks to
proceed in forma pauperis, "(2) ... the court shall dismiss the
case at any time if the court determines that – ... (B) the
action ... (i) is frivolous or malicious; (ii) fails to state a claim
on which relief may be granted; or (iii) seeks monetary relief
against a defendant who is immune from such relief." 28
U.S.C. § 1915(e)(2)(B). [2]

Thus, even if a plaintiff meets the financial criteria to
commence an action in forma pauperis, it is the court's
responsibility to determine whether the plaintiff may properly
maintain the complaint that he filed in this District before the
court may permit the plaintiff to proceed with this action in
forma pauperis. *See id.*

Likewise, under 28 U.S.C. § 1915A, a court must review
any "complaint in a civil action in which a prisoner seeks
redress from a governmental entity or officer or employee of a
governmental entity" and must "identify cognizable claims or
dismiss the complaint, or any portion of the complaint, if the
complaint ... is frivolous, malicious, or fails to state a claim
upon which relief may be granted; or ... seeks monetary relief
from a defendant who is immune from such relief." 28 U.S.C.
§ 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d
Cir. 1999) (per curiam) (Section 1915A applies to all actions
brought by prisoners against government officials even when
plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636,
639 (2d Cir. 2007) (stating that both sections 1915 and
1915A are available to evaluate prisoner pro se complaints).

In reviewing a pro se complaint, the court has a duty to show
liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d
605, 606 (2d Cir. 1990) (per curiam), and should exercise
"extreme caution ... in ordering sua sponte dismissal of a
pro se complaint *before* the adverse party has been served
and both parties (but particularly the plaintiff) have had an
opportunity to respond." *Anderson v. Coughlin*, 700 F.2d
37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a
court should not dismiss a complaint if the plaintiff has stated

NEB MORROW, III, Plaintiff, V. L. VANDERWERFF, Law..., Not Reported in Fed....

Case 5:23-cv-00731-BKS-ML    Document 7    Filed 12/21/23    Page 24 of 64

"enough facts to state a claim to relief that is plausible on its face." 🚩 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**\*2** "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 🚩 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing 🚩 *Twombly*, 550 U.S. at 556). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing 🚩 *Twombly*, 550 U.S. at 555).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " 🚩 *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 🚩 *Iqbal*, 556 U.S. at 678 (citing 🚩 *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

### B. Summary of the Complaint

Morrow alleges wrongdoing that occurred while he was incarcerated at Auburn Correctional Facility ("Auburn C.F."). *See generally* Compl. The following facts are set forth as alleged by plaintiff in his complaint.

In March 2015, Morrow worked as a paralegal law clerk in the prison law library. Compl. at 2. Between March 25, 2015 and April 13, 2015, plaintiff filed three grievances (the "Initial Grievances") under New York State Department of Corrections and Community Supervision ("DOCCS") Directive 4483(M) regarding "the need for [the] law library supervisor, [defendant] C.O. Vanderwerff, to hire two prisoner General Clerks because the law library was understaffed[,]" and plaintiff "being made to work seven days a week, three modules a day," and "only being paid for working five days a week, two modules a day." *Id.* at 3.

Plaintiff also "requested a copy of the law clerk's contract to establish that he was made to contract legal assistance services for seven days a week." *Id.* Thereafter, plaintiff was given a copy of the contract that he had signed, with "the indication '7' days per week ... whited out[,]" which he complained about to no avail. *Id.*

Thereafter, "Defendant Vanderwerff responded to [Morrow's] verbal and written complaints by issuing a threat in writing" and advising plaintiff to "appeal the matters" to defendant Law Library Administrator Tanea because he "is responsible for staffing the law library[.]" Compl. at 3-4. Plaintiff then appealed his grievances to defendant Tanea, who "ignored the appeals by sending them to the Inmate Grievance Resolution Committee (IGRC)." *Id.* at 4. As plaintiff's complaint explains, the IGRC "refused to make any recommendations on the complaints ... because ... the matters fell under Directive 4483(M)[,]" and instead "sent the appeals back to [defendant] Tanea[.]" *Id.*

On April 21, 2015, Morrow sent another complaint to defendant Tanea, which defendant Tanea improperly forwarded to the IGRC. Compl. at 4. The IGRC then forwarded plaintiff's appeals to defendant Auburn C.F. Superintendent Graham, who denied the appeals on April 30, 2015. *Id.*

On May 5, 2015, Morrow sent his appeal back to the IGRC, believing that the IGRC would in turn send it to the Central Office Review Committee ("CORC"), which would then "forward the matters to the law library coordinator," defendant Ost, because "the matters had been repeatedly referred to as Directive 4483(M) complaints." Compl. at 4. However, the Inmate Grievance Program ("IGP") Supervisor (not a party here) did not forward the appeal to CORC based on her incorrect determination that the appeal was governed by DOCCS Directive 4040, and therefore untimely. *Id.* at 4-5.

**\*3** On July 3, 2015, Morrow was "fired from the law library[.]" Compl. at 5. On or about that same day, plaintiff "asked defendant Vanderwerff why he was fired[,] and defendant Vanderwerff told plaintiff that [he and] defendant Tanea ... had decided to terminate plaintiff because of a security concern related to the then recent Clinton [Correctional Facility] escape." *Id.* Plaintiff was further advised that "the Commissioner limited all prisoners to 3 years in a program and one year in a locking location." *Id.*

Case 5:23-cv-00731-BKS-ML   Document 7   Filed 12/21/23   Page 25 of 64

NEB MORROW, III, Plaintiff, V. L. VANDERWERFF, Law..., Not Reported in Fed....

At the time, Morrow "only had 21 months in the law library[.]" Compl. at 5. Plaintiff asked defendant Vanderwerff to explain how he "fell under" the stated security concern. *Id.* Defendant Vanderwerff "refused to answer plaintiff truthfully." *Id.* at 5-6.

On July 3, 2015, Morrow filed a 4483(M) grievance regarding his termination (the "Termination Grievance"). Compl. at 6. Plaintiff advised defendant Tanea in his complaint that "the use of the grievance form was only a formality and that the complaint was filed with [him] pursuant to Directive 4483(M)." *Id.*

On July 5, 2015, Morrow filed a criminal complaint with the New York State Attorney General regarding the treatment he was experiencing. Compl. at 9. Instead of answering the Termination Grievance, defendant Tanea sent it to the IGRC. Compl. at 6. The IGRC sent the grievance back to defendant Tanea, who returned it to the IGRC. *Id.*

On July 27, 2015, Morrow sent his appeal of his Initial Grievances directly to defendant Ost, "advising her that staff in Auburn was not following the protocol of 4483(M)[.]" Compl. at 5. Defendant Ost did not respond to plaintiff's appeal or his follow-up letter. *Id.*

On July 29, 2015, Morrow complained to defendant Tanea about his refusal to address plaintiff's Termination Grievance. Compl. at 6.

On July 30, 2015, the Attorney General referred Morrow's complaint to defendant Deputy Commissioner of DOCCS Stephen Maher. Compl. at 9. Defendant Maher failed to respond to plaintiff, take corrective action, or conduct an investigation. *Id.*

On August 11, 2015, the IGRC sent Morrow's Termination Grievance to defendant Graham "for his action." Compl. at 6. Plaintiff noted on the grievance appeal form that his grievance was supposed to be reviewed by defendant Tanea pursuant to Directive 4483(M), then the Superintendent, and then the law library coordinator, defendant Ost. *Id.*

On August 12, 2015, Morrow wrote to defendant Tanea "asking for answers to the several appeals he filed pertaining to the law library." Compl. at 6.

On August 13, 2015, Morrow received a notification from defendant Graham upholding the decision to remove him from his paralegal law clerk position. Compl. at 6. Plaintiff appealed that determination to defendant Ost, and explained in his appeal statement that his termination "could not have been [due to] a true security concern" because he "remained the legal research instructor[,]" and that the termination instead occurred because he complained about law library conditions. *Id.* at 7; *see also* Dkt. No. 1-1 at 66-70.

On August 20, 2015, defendant Tanea "finally responded, stating that the IGRC supervisor told him that plaintiff would be receiving a decision in the mail in the near future." Compl. at 6.

On October 7, 2015, the Director of the Inmate Grievance Program acknowledged that Morrow's Termination Grievance was received by CORC on September 25, 2015. Dkt. No. 1-1 at 142.

On May 4, 2016, CORC denied Morrow's appeal of Superintendent Graham's decision upholding plaintiff's termination, "finding that plaintiff was removed for security reasons that they too refused to disclose the substance of[.]" Compl. at 8; Dkt. No. 1-1 at 143. In the denial notice, CORC acknowledged investigating plaintiff's contention that his termination was retaliatory. Dkt. No. 1-1 at 143.

**\*4** CORC is comprised of the following individuals, who are each named as defendants: (1) Deputy Commissioner and Counsel Kevin P. Bruen; (2) Deputy Commissioner of Administration Daniel F. Martuscello III; (3) Deputy Commissioner of Facilities Joseph Bellnier; (4) Deputy Commissioner of Program Services Jeff McKoy; and (5) Chief Medical Officer Carl J. Koenigsmann (collectively the "CORC defendants"). Compl. at 2, 9.

Construed liberally, Morrow asserts the following claims against the defendants: (1) First Amendment retaliation claims; and (2) state law claims based on forced labor without compensation and beyond the hourly and weekly time periods statutorily allowed. Plaintiff seeks monetary damages. Compl. at 10-11. For a complete statement of plaintiff's claims, reference is made to the complaint.

### C. Nature of the Action

Morrow brings this action pursuant to ▭ Section 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. ▭ 42 U.S.C. § 1983. " ▭ Section

NEB MORROW, III, Plaintiff, V. L. VANDERWERFF, Law..., Not Reported in Fed....

Case 5:23-cv-00731-BKS-ML    Document 7    Filed 12/21/23    Page 26 of 64

1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991)); *Iqbal,* 556 U.S. at 676.

"[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). "[V]icarious liability is inapplicable to ... § 1983 suits." *Iqbal* 556 U.S. at 676; *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir. 2003) ("[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim.").

Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" in an alleged constitutional violation only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir. 1986));[3] *see also Shomo v. City of New York,* 579 F.3d 176, 184 (2d Cir. 2009) (receiving and responding to grievances and letters of complaint is insufficient to establish personal involvement unless such put the supervisor on notice of a constitutional violation that he or she then failed to remedy); *Molano v. Bezio,* 42 F. Supp. 3d 465, 471 (W.D.N.Y. Apr. 13, 2012) ("[W]hile personal involvement cannot be founded solely on supervision, liability can be found if the official proactively participated in reviewing the

administrative appeals as opposed merely to rubber-stamping the results." (citing *Collins v. Ferguson,* 804 F. Supp. 2d 134, 140 (W.D.N.Y. 2011)).

### 1. Retaliation Claims

**\*5** Courts must approach claims of retaliation " 'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation– can be characterized as a constitutionally proscribed retaliatory act.' " *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds,* *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002)).

To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis,* 320 F.3d at 352 (quoting *Dawes,* 239 F.3d at 492). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983).

### i. Vanderwerff, Tanea, Graham and the CORC defendants

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant,* 537 U.S. 185, 191 (2d Cir. 2008), Morrow's retaliation claims against defendants Vanderwerff, Tanea, Graham, Bruen, Martuscello, Bellnier, McKoy, and Koenigsmann survive sua sponte review and require a response.

### ii. Ost

Morrow alleges that defendant Ost failed to respond to his grievance appeals, including his appeal of the Termination Grievance, and in this regard was personally involved in the alleged retaliatory termination through her failure to remedy the wrongdoing. Compl. at 5-7, 11.

Case 5:23-cv-00731-BKS-ML Document 7 Filed 12/21/23 Page 27 of 64

NEB MORROW, III, Plaintiff, V. L. VANDERWERFF, Law..., Not Reported in Fed....

In light of the Second Circuit's decision in *Grullon*, this Court will assume, for purposes of this Decision and Order, that defendant Ost received and read Morrow's appeals addressed to her, and in this way became aware of plaintiff's contention that he was terminated from his paralegal law clerk position as a result of exercising his First Amendment rights. *See* ⚑ *Grullon*, 720 F.3d at 141 (noting that at the pleading stage, a pro se prisoner who alleges that he sent a letter to a supervisory official regarding the conditions of his confinement is "entitled to have the court draw the reasonable inference ... that [a supervisory official] ... received ..., read ..., and became aware of the alleged conditions of which [the inmate] complained").

Even with this assumption, though, Morrow's retaliation claim against defendant Ost must be dismissed because a supervisory official must have the authority to remedy the alleged wrong in order to be personally involved in an alleged ongoing constitutional violation about which he or she becomes aware. *See* ⚑ *Eldridge v. Williams*, No. 10-CV-0423, 2013 WL 4005499, at *5 (S.D.N.Y. July 30, 2013) ("[E]ven if a complaint or letter is directly addressed to the defendant and the defendant becomes subjectively aware of the alleged problem, if the defendant 'lacks the authority to remedy or take action with respect to any constitutional violation,' personal involvement 'cannot be found.' " (quoting *Kregler v. City of New York*, 821 F. Supp. 2d 651, 658 (S.D.N.Y. 2011)); *Guillory v. Weber*, No. 9:12-CV-280 (LEK/RFT), 2015 WL 1419088, at *11 (N.D.N.Y. Mar. 27, 2015) (noting that for a supervisory official to be liable for failing to remedy a wrong after learning of the violation, the violation must be ongoing and involve "a situation that he can remedy directly").

**\*6** Here, it is clear from the allegations in the complaint, and documents attached thereto, that Morrow's grievances regarding his law library conditions, and employment and termination as a paralegal law clerk, were considered and denied by officials other than defendant Ost.

The fact that defendant Ost allegedly ignored Morrow's appeals, and in this regard deferred to the existing administrative process, is not enough to plausibly suggest her personal involvement in the alleged retaliatory termination. *See, e.g., Rush v. Fischer*, 923 F. Supp. 2d 545, 552 (S.D.N.Y. 2013) ("[P]ersonal involvement has not been shown where a supervisor's only response to an inmate's

complaint is to refer the complaint to the appropriate staff for investigation."); ⚑ *Vega v. Artus*, 610 F. Supp. 2d 185, 198 (N.D.N.Y. 2009) (finding no personal involvement where "the only involvement of the supervisory official was to refer the inmate's complaint to the appropriate staff for investigation"); ⚑ *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (a supervisor's referral of a prisoner's letter of complaint to a subordinate for review, and a later response to the prisoner to advise him of the subordinate's decision did not demonstrate the requisite personal involvement on the part of the supervisory prison official); *cf.* ⚑ *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ("We see no reason why [the Superintendent] should have intervened in advance of [a Tier III hearing] in which Colon was to be given the opportunity to substantiate the claim that he made in his letter. We therefore conclude that no reasonable jury could have held Senkowski liable.").

Moreover, the law is well-settled that the alleged failure to follow the grievance process, which Morrow alleges required defendant Ost to consider his appeal in the first instance, does not give rise to a cognizable ⚑ Section 1983 claim. *See Houston v. Schriro*, No. 11-CV-7374, 2013 WL 4457375, at *10 (S.D.N.Y. Aug. 20, 2013) ("Ignoring grievances cannot support a First Amendment retaliation claim." (citing *Islam v. Goord*, No. 05-CV-7502, 2006 WL 2819651, at *6 (S.D.N.Y. Sept. 29, 2006) (prison official's failure to investigate prisoner's complaint is not sufficiently adverse to support First Amendment retaliation)); *Rhodes v. Hoy*, No. 9:05-CV-0836 (FJS/DEP), 2007 WL 1343649, at *6 (N.D.N.Y. May 5, 2007) (An inmate has "no constitutional right of access to the established inmate grievance program."); ⚠ *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[P]articipation in an inmate grievance process is not a constitutionally protected right."); ⚑ *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (holding that "inmate grievance procedures are not required by the Constitution" and therefore failure to see to it that grievances are properly processed does not create a claim under ⚑ Section 1983).

Accordingly, Morrow's retaliation claim against defendant Ost is dismissed pursuant to ⚑ 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### iii. **Maher**

Morrow alleges that he filed a criminal complaint with the New York State Attorney General's Office about the actions of officials at Auburn C.F., and that complaint was referred to defendant Maher. *See* Compl. at 9. Plaintiff further alleges that defendant Maher failed to investigate his allegations or otherwise respond to his follow-up inquiries, and as a result was personally involved in the alleged retaliatory termination through his failure to remedy the wrongdoing. *Id.*

**\*7** As an initial matter, the complaint lacks any allegations which plausibly suggest that defendant Maher played any role in reviewing Morrow's grievances, or had the authority to remedy the alleged retaliatory termination by reinstating plaintiff as a paralegal law clerk at Auburn C.F. Thus, there is no basis for the Court to infer that defendant Maher was personally involved in the alleged retaliatory termination.

Moreover, Morrow does not have a constitutional right to bring criminal charges against a member of prison staff. *See, e.g., Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ ATB), 2016 WL 6267968, at \*11 (N.D.N.Y. Oct. 26, 2016) ("[I]t is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual."). In addition, the refusal to investigate accusations of criminal misconduct does not give rise to a cognizable 🔖 Section 1983 claim. *See, e.g.,* 🔖 *Banks v. Annucci*, 48 F. Supp. 3d 394, 414-15 (N.D.N.Y. 2014) ("[I]nmates do not enjoy a constitutional right to an investigation of any kind by government officials"); 🔖⚠ *Pine v. Seally*, No. 9:09-CV-1198 (DNH/ATB), 2011 WL 856426, at \*9 (N.D.N.Y. Feb. 4, 2011) (same).

Accordingly, Morrow's retaliation claim against defendant Maher is dismissed pursuant to 🔖 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. **State Law Claims**

Morrow asserts state law claims based on his allegations that he performed work without pay, and beyond the hourly and weekly time period allowed under 🔖 New York Correction Law § 171. Plaintiff has asserted his claims against the defendants in their individual capacities. *See* Compl. at 1-2.

🚩 New York Correction Law § 24 provides a jurisdictional limitation regarding state law claims asserted against any officer or employee of DOCCS, and thus, "the Court is obligated to address the issue on initial review." *See Flynn v. Ward*, No. 9:15-CV-1028 (GLS/CFH), 2015 WL 8056060, at \*6 (N.D.N.Y. Dec. 4, 2015). 🚩 Correction Law § 24(1) provides:

> No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, which for purposes of this section shall include members of the state board of parole, in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

*See Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996).

"Claims for damages arising out of a DOCCS employee's act performed within the scope of his employment may be maintained in the New York Court of Claims as a claim against the State of New York." *Heyliger v. Gebler*, 496 F. Supp. 2d 250, 252 (W.D.N.Y. 2007). Courts look at the following factors to determine whether a defendant's action is within the scope of employment:

> the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in the actual practice; whether the act is one commonly done by any employee; the extent of departure from normal methods of performance; and whether the specific act was one that the

Case 5:23-cv-00731-BKS-ML   Document 7   Filed 12/21/23   Page 29 of 64

NEB MORROW, III, Plaintiff, V. L. VANDERWERFF, Law..., Not Reported in Fed....

employer could have reasonably anticipated.

*Ierardi v. Sisco*, 119 F.3d 183, 187 (2d Cir. 1997) (quotations and citations omitted).

The test to determine whether the defendants' actions fall within the scope of their employment is "whether the act was done while the servant was doing his master's work no matter how irregularly, or with what disregard of the instructions." *Cruz v. New York*, 24 F. Supp. 3d 299, 309 (W.D.N.Y. 2014) (citing *Cepeda v. Coughlin*, 128 A.D.2d 995, 996 (3d Dep't 1987)).

**\*8** "In certain circumstances, conduct that is 'prompted by purely personal reasons unrelated to the employers' interest,' or 'an intentional course of conduct contrary to institutional rules, training and common sense,' may be found outside the scope of employment." *Flynn*, 2015 WL 8056060, at \*6 (quoting *Johnson v. N.Y. State Dep't of Corr. Servs. and Cmty. Supervision*, No. 11-CV-0079, 2013 W L 5347468, at \*3 (W.D.N.Y. Sept. 23, 2013)).

It appears doubtful from the allegations in the complaint that one or more of the named defendants forced Morrow to work without pay, and beyond the hourly and weekly time period statutorily allowed, for purely personal reasons wholly unrelated to the employers' interest. Moreover, even if an inference could be drawn that one or more defendants acted outside the scope of his or her employment in allegedly forcing plaintiff to work in this manner, evidentiary material may show otherwise.

If that proved to be the case, Morrow's claims would be subject to immediate dismissal in this Court. However, if brought in state court those state law claims could still continue against the State. Thus, this Court has a compelling reason not to exercise supplemental jurisdiction over plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(4).

Furthermore, even assuming that New York Correction Law § 24 does not present a jurisdictional bar to Morrow's state law claims against the named defendants, exercising supplemental jurisdiction over these claims would be improper because they raise complex issues of state law related to liability, damages, and potential affirmative defenses. *See* 28 U.S.C. § 1367(c)(1). Indeed, the Court is unaware of any other federal court within the Second Circuit that has considered and decided the merits of an inmate's state law claims based on allegations that he was forced to work without pay, and beyond the hourly and weekly time period statutorily allowed.

Accordingly, the Court declines to entertain Morrow's state law claims under the Court's supplemental jurisdiction, and those claims are therefore dismissed without prejudice to pursuing any available state court remedies.

IV. **CONCLUSION**
Therefore, it is

ORDERED that

1. Plaintiff's IFP Application (Dkt. No. 5) is **GRANTED**;[4]

2. The Clerk shall provide the superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form (Dkt. No. 6), and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915;[5]

**\*9** 3. The Clerk shall provide a copy of plaintiff's inmate authorization form (Dkt. No. 6) to the Financial Deputy of the Clerk's Office;

4. Plaintiff's First Amendment retaliation claims against defendants Vanderwerff, Tanea, Graham, Bruen, Martuscello, Bellnier, McKoy, and Koenigsmann **SURVIVE** sua sponte review and require a response;

5. Plaintiff's remaining claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted;[6]

6. Defendants Ost and Maher are **DISMISSED without prejudice** as defendants for the reasons set forth above;

7. Upon receipt from plaintiff of the documents required for service, the Clerk shall issue summonses and forward them, along with copies of the complaint, to the United

NEB MORROW, III, Plaintiff, V. L. VANDERWERFF, Law..., Not Reported in Fed....

Case 5:23-cv-00731-BKS-ML    Document 7    Filed 12/21/23    Page 30 of 64

States Marshal for service upon defendants Vanderwerff, Tanea, Graham, Bruen, Martuscello, Bellnier, McKoy, and Koenigsmann;

8. The Clerk shall also forward a copy of the summons and complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order;

9. Defendants Vanderwerff, Tanea, Graham, Bruen, Martuscello, Bellnier, McKoy, and Koenigsmann, or their counsel, file a response to plaintiff's claims against them as provided for in Rule 12 of the Federal Rules of Civil Procedure after service of process on them;

10. All pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367;

11. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel**;

12. **Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket**;

13. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action;

14. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions;

15. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; plaintiff's failure to do so will result in the dismissal of this action**; and

\*10  16. The Clerk shall serve a copy of this Decision and Order on plaintiff.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 13455972

## Footnotes

1    Plaintiff's initial application to proceed IFP was denied as incomplete and the action was administratively closed. Dkt. No. 4. Plaintiff then timely re-filed his IFP Application, and this action was re-opened. Dkt. Nos. 5, 7.

2    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

3    The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citing *Grullon*, 720 F.3d at 139)). For purposes of this Decision and Order, the Court assumes that all five categories under *Colon* remain valid.

NEB MORROW, III, Plaintiff, V. L. VANDERWERFF, Law..., Not Reported in Fed....

Case 5:23-cv-00731-BKS-ML    Document 7    Filed 12/21/23    Page 31 of 64

4    Plaintiff should note that although his IFP Application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

5    "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

6    Should plaintiff seek to pursue any of the claims dismissed without prejudice, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure. Plaintiff's deadline to amend his pleading as a matter of course is set forth in Rule 15(a) of the Federal Rules of Civil Procedure. In addition, as noted, plaintiff is free to pursue any available state law claims in the appropriate state court.

---

**End of Document**                     © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 6267968
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eddie HOUSTON, Plaintiff,

v.

COLLERMAN, et. al., Defendants.

9:16-CV-1009 (BKS/ATB)

|

Signed 10/26/2016

**Attorneys and Law Firms**

EDDIE HOUSTON, 08-A-3122, Mid-State Correctional Facility, P.O. Box 2500, Marcy, New York 13403, Plaintiff, pro se.

**AMENDED DECISION AND ORDER** [1]

BRENDA K. SANNES, United States District Judge

**I. Introduction**

**\*1** The Clerk has sent to the Court for review a civil rights action filed by pro se plaintiff Eddie Houston. Dkt. No. 1 ("Compl."). Plaintiff has not paid the statutory filing fee for this action and seeks leave to proceed in forma pauperis. Dkt. No. 2 ("IFP Application").

**II. IFP Application**

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 W L 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). Upon review of plaintiff's IFP Application, the Court finds that plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in the Northern District of New York. Plaintiff's IFP application (Dkt. No. 2) is granted. [2]

**III. Initial Screening**

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency

of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

**\*2** Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, at \*1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

Case 5:23-cv-00731-BKS-ML    Document 7    Filed 12/21/23    Page 33 of 64

plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 Fed.Appx. 102, 104 (2d Cir. 2009).

## IV. Summary of the Complaint [4]

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that " § 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Court will construe the allegations in plaintiff's complaint with the utmost leniency. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**\*3** Plaintiff, an inmate currently being held at Mid-State Correctional Facility ("Mid-State C.F."), asserts claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). The incidents that form the foundation for this complaint occurred while plaintiff was confined at Elmira Correctional Facility ("Elmira C.F."). *See* Compl., *generally*. On July 13, 2013, plaintiff filed a grievance claiming that defendants Officer Copestick ("Copestick") and

Officer Schieber ("Schieber") harassed him, on more than one occasion, about his medication. *See id.* at 6; *see* Dkt. No. 1-1 at 3-5. On August 5, 2013, after an investigation into the allegations, the Superintendent of Elmira C.F. denied plaintiff's grievance. *See* Dkt. No. 1-1 at 5.

On September 30, 2013, plaintiff was on his way to the masjid to participate in Ramadan when he was stopped by Copestick and Schieber and directed to the wall for a pat-frisk. *See* Compl. at 5. While plaintiff's hands were on the wall, Schieber "violently kicked" his legs from underneath him. *See id.* Schieber "stomped" on plaintiff's ankles while Copestick attempted to choke plaintiff. *See id.* During the assault, the officers yelled racial slurs. *See id.* Defendant Sergeant Collerman ("Collerman") watched the officers beat plaintiff. *See* Compl. at 5. As a result of the attack, plaintiff's eyeglasses were broken, his ankle was swollen, and he could not walk. *See id.* at 5, 9.

At approximately 5:00 p.m., plaintiff received medical treatment for complaints of pain in his right big toe and swelling in his right foot. *See* Dkt. No. 1-1 at 19. Plaintiff received Motrin and was advised to follow with sick call requests, if needed. *See id.* A "use of force/inmate injury" report was compiled. [5] *See id.* At approximately 7:15 p.m., plaintiff, a diabetic, told a medical provider that he had not received his daily "medication." *See id.* The provider ordered various medications to be delivered to plaintiff on a daily basis. *See id.*

On October 1, 2013, plaintiff received a misbehavior report charging him with assault on staff and with refusing a direct order and search. [6] *See* Compl. at 5. On the same day, plaintiff was placed in confinement in the Special Housing Unit ("SHU"). *See* Dkt. No. 1-1 at 19. On October 3, 2013, plaintiff attended a Hearing regarding the misbehavior report. [7] *See* Dkt. No. 1-1 at 10. On November 3, 2013, plaintiff received a copy of the hearing disposition dismissing all charges. *See* Dkt. No. 1-1 at 11; Dkt. No. 1 at 5.

On November 3, 2013, plaintiff was released from the SHU. *See* Compl. at 5. While plaintiff was in the SHU, he was unable to participate in Ramadan, denied religious meals, denied parole, and excluded from mental health programs. *See id.*

Construed liberally, the complaint contains the following claims: (1) Copestick and Schieber violated plaintiff's Eighth Amendment rights with use of excessive force

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

Case 5:23-cv-00731-BKS-ML    Document 7    Filed 12/21/23    Page 34 of 64

(Fifth, Fifteenth, Twentieth, and Twenty-Second Causes of Action); (2) Collerman failed to protect plaintiff from the assault in violation of plaintiff's Eighth Amendment rights (Fifteenth Cause of Action); (3) defendants were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment (Sixth, Seventh, and Fifteenth Causes of Action); (4) Copestick and Schieber retaliated against plaintiff in violation of plaintiff's First Amendment rights (Twenty-First Cause of Action); (5) plaintiff's First Amendment rights to religious freedom were violated (Fourth Cause of Action); (6) plaintiff's Fourteenth Amendment rights to due process and equal protection were violated (First, Second, Third, Sixth, Sixteenth, and Eighteenth Causes of Action); (7) defendants failed to investigate plaintiff's complaints and follow grievance procedures (Tenth and Thirteenth Causes of Action); (8) perjury claims against officers who filed the misbehavior report (Eleventh and Seventeenth Causes of Action); and (9) supervisory claims against DOCCS (Eighth, Ninth, Twelfth, Fourteenth, Nineteenth, Twenty-Third, Twenty-Fourth, Twenty-Fifth, and Twenty Sixth Causes of Action). *See* Compl., *generally.* Plaintiff seeks compensatory damages, injunctive relief, and criminal charges against defendants (Eleventh and Seventeenth Causes of Action). *See* Compl. at 9-13.

## V. Analysis

### A. Eleventh Amendment

**\*4** The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.");

*Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997);

*Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer,* 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through 42 U.S.C. § 1983,

*see Quern v. Jordan,* 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman*

*v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York,* No. 93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).

Here, insofar as plaintiff seeks an award of money damages pursuant to Section 1983 against DOCCS, those claims are dismissed as plaintiff seeks relief from a defendant immune from suit under section 1983. *See LeGrand v. Evan,* 702 F.2d 415, 417 (2d Cir. 1983); *see Meehan v. Kenville,* 555 Fed.Appx. 116 (2d Cir. 2014); *see Simmons v. Gowanda Corr. Facility,* No. 13-CV-0647, 2013 WL 3340646, at *1 (W.D.N.Y. July 1, 2013) ("the New York State Department of Corrections and [the named correctional facility] enjoy the same Eleventh Amendment immunity from suit in federal court as enjoyed by the state itself") (quoting *Posr. v. Court Officer Shield No. 207,* 180 F.3d 409, 411 (2d Cir. 1999)).

### B. Eighth Amendment

#### 1. Excessive Force Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter,* 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi,* 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian,* 503 U.S. 1, 8 (1992)). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 7 (citing *Whitley v. Albers,* 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial inquiry in excessive force cases —not whether a certain quantum of injury was sustained."). "Accordingly, when considering the subjective element of the

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

Case 5:23-cv-00731-BKS-ML    Document 7    Filed 12/21/23    Page 35 of 64

governing Eighth Amendment test, a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness." *Wynter v. Ramey,* No. 11-CV-0257 (DNH/DEP), 2013 W L 5465343, at *5 (N.D.N.Y. Sept. 30, 2013) (citations omitted).

Plaintiff has identified the time, location and individuals involved in the alleged assault. Thus, the Court finds that plaintiff's Eighth Amendment excessive force claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Failure To Intervene

**\*5** The failure of corrections officers to employ reasonable measures to protect an inmate from violence by others may rise to the level of an Eighth Amendment violation. *See Ayers v. Coughlin,* 780 F.2d 205, 209 (2d Cir. 1985). Moreover, allegations that an officer failed to intervene and prevent assaults are sufficient to state an Eighth Amendment failure to protect claim. *See Rogers v. Artus,* No. 13-CV-21, 2013 WL 5175570, at *3 (W.D.N.Y. Sept. 11, 2013). To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Curley v. Vill. of Suffern,* 268 F.3d 65, 72 (2d Cir. 2001). In order to succeed on a claim of failure to protect, the inmate "must establish both that a substantial risk to his safety actually existed and that the offending [defendant] knew of and consciously disregarded that risk." *See Walsh v. Goord,* 2007 WL 1572146, at *9 (W.D.N.Y. May 23, 2007) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1970)). In addition, a failure-to-protect claim requires a showing that prison officials acted with "deliberate indifference" to the inmate's safety. *Morales v. New York State Dep't of Corr.,* 842 F.2d 27, 30 (2d Cir. 1988).

At this early stage of the proceeding, plaintiff has alleged enough to require a response from Collerman to plaintiff's

claim that he failed to protect plaintiff from the assault by Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 3. Deliberate Indifference to Serious Medical Needs

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994). The objective component of an Eighth Amendment deliberate indifference medical claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted). Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong,* 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Hathaway,* 99 F.3d at 553). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994). To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer,* 511 U.S. at 837; *Chance,* 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer,* 511 U.S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle,* 429 U.S. at 105-06.

In this instance, even assuming plaintiff's injuries were sufficiently serious, plaintiff must allege facts to demonstrate that defendants acted with a sufficiently culpable state of mind. *See Hathaway,* 99 F.3d at 553. Plaintiff claims that

Case 5:23-cv-00731-BKS-ML   Document 7   Filed 12/21/23   Page 36 of 64

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

his medical treatment was inadequate because his ankle was not x-rayed until he was transferred to "his next facility," two months after the alleged incident. *See* Compl. at 10. "When the basis of a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702). "Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years." *Demata v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999) (internal citations omitted).

**\*6** Here, the complaint is void of any facts establishing that any defendant deliberately delayed plaintiff's medical treatment. On the day of the alleged attack, plaintiff received medical attention and prescription medication. *See* Dkt. No. 1-1 at 19. Plaintiff was treated on three other occasions in October 2013 for foot pain before undergoing x-rays on November 14, 2013. Dkt. No. 1-1 at 20-21. During those visits, plaintiff received ice packs, Motrin, and refused Ibuprofen. See id. Plaintiff does not allege that his condition deteriorated during that time. *See Rodriguez v. City of New York*, 802 F.Supp. 477, 482 (S.D.N.Y. 2011) (finding that the plaintiff did not establish that his condition worsened as a result of a delay between his request and receipt of medical attention). Plaintiff does not allege that he sought and was refused medical treatment during this two month time period. *See Kee v. Hasty*, No. 01 Civ. 2123, 2004 W L 807071, at \*29 (S.D.N.Y. April 14, 2004) (holding that the plaintiff's Eighth Amendment claims were overly conclusory because the inmate failed to specify the dates on which he was denied proper treatment, the nature of his needs on those dates, and the nature of the treatment that was purportedly denied by the defendants). The complaint lacks any facts to plausibly suggest that any defendant knew of the severity of plaintiff's injury and the risk posed by any delay in his treatment.

Plaintiff, a diabetic, also claims that he was unable to read or see for over one year because his eye glasses were not replaced until over a year after the assault. *See* Compl. at 10. The complaint does not contain any facts suggesting that plaintiff made any complaints or sick call requests to any defendant related to his eyeglasses. Plaintiff also failed to assert facts suggesting that he made any defendant "aware of the serious harm could occur" if he was not provided with his glasses. *See Myrie v. Calvo/Calvoba*, 591 F.Supp.2d 620, 628 (S.D.N.Y. 2008) (holding that the complaint did not suggest that any defendant was deliberately indifferent to the plaintiff's vision problems).

Plaintiff's Eighth Amendment allegations are also subject to dismissal based upon the failure to plead personal involvement on the part of any defendant. It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 W L 857528, at \*2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). The complaint lacks any facts suggesting that Copestick, Schieber, or Collerman were involved in plaintiff's medical treatment or refused to allow plaintiff to receive medical attention. In the absence of factual allegations sufficient to plausibly suggest that any defendant was personally involved, the complaint fails to state a cognizable claim against him. Consequently, plaintiff's Eighth Amendment claims for deliberate indifference to plaintiff's medical needs are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

### C. First Amendment

#### 1. Retaliation

Plaintiff alleges that Copestick and Schieber assaulted him in retaliation for plaintiff's grievance against them. *See* Compl. at 6,13. To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against

Case 5:23-cv-00731-BKS-ML    Document 7    Filed 12/21/23    Page 37 of 64

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff." *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988).

**\*7** It is well-settled that filing a grievance is constitutionally protected conduct. *Johnson v. Eggersdorf*, 8 Fed.Appx. 140, 144 (2d Cir. 2001); *Graham v. R.J. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted). While there is no "bright line" defining the limits of the temporal relationship, courts in the Circuit have held that an adverse action taken within three months after a protected activity can reasonably be perceived as retaliatory. *See Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001); *see also Ashok v. Barnhart*, No. 01-CV-1311, 289 F.Supp.2d 305, 314 (E.D.N.Y. Oct. 30, 2003) (the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months).

At this juncture, the Court finds that plaintiff's retaliation claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Religious Claims

Plaintiff alleges that the defendants violated his religious rights because he was unable to participate in Ramadan and denied his religious meals as a direct result of the false misbehavior report. Dkt. No. 1 at 5-6.

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (citing *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials furthers some legitimate penological objective. *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988) (citations omitted). A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591).[8] A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir. 1996). Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467

F.3d at 275 (quoting 🚩 *Ford*, 352 F.3d at 595) (punctuation omitted).

**\*8** In this case, plaintiff has not alleged who issued the misbehavior report and it is not attached to the complaint. An inmate "has no general constitutional right to be free from being falsely accused in a misbehavior report." 🚩 *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997). While a false misbehavior report may give rise to a claim under 🚩 § 1983 "when done in retaliation for the exercise of a constitutional right," 🚩 *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015), here there is no such allegation. While the deprivation of religious meals in SHU may be sufficient to state a claim, *see* 🚩 *Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. 2016); *Skates v. Shusda*, No. 9:14-CV-1092 (TJM/DEP), 2016 WL 3882530, at \*\*4-5 (N.D.N.Y. May 31, 2016), here there is no indication that the defendants had any personal involvement in that conduct. The allegations, without more, fail to plausibly suggest that any defendant burdened plaintiff's right to freely practice his religion. Thus, plaintiff's First Amendment claims against are dismissed without prejudice pursuant to 🚩 28 U.S.C. § 1915(e)(2)(B) and 🚩 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### D. Fourteenth Amendment

### 1. Equal Protection/Discrimination

Plaintiff claims that the September 30, 2013 assault was racially motivated. *See* Compl. at 6, 12. "When verbal harassment and simultaneous physical abuse ... are considered together, [courts] have little doubt concluding that plaintiff's allegations [are] sufficient to state a 🚩 § 1983 claim for discrimination on the basis of race. *Cole v. Fischer*, 379 Fed.Appx. 40, 43 (2d Cir. 2010). "Under the Fourteenth Amendment's Equal Protection clause, a plaintiff may be able to recover for a physical assault that would not meet the objective threshold for Eighth Amendment excessive force claims, if the defendant's conduct was motivated by racial or religious discrimination." *Bhuiyan v. Wright*, No. 9:06-CV-409 ATB, 2011 WL 1870235, at \*9 (N.D.N.Y. May 13, 2011) (citation omitted).

At this juncture, plaintiff has sufficiently plead a Fourteenth Amendment equal protection claim to warrant a response from Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Due Process

Plaintiff claims that defendants violated his due process rights when they failed to replace plaintiff's eyeglasses. *See* Compl. at 10. Plaintiff also asserts that his Fourteenth Amendment rights were violated because he was improperly confined to the SHU without a hearing as a result of a false misbehavior report. *See id.* at 10. During his SHU confinement, was allegedly unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from mental health programs. *See id.*

### a. Property Claim

The Supreme Court has held that the negligent or intentional deprivation of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. 🚩 *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing 🚩 *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *Davis v. New York*, 311 Fed.Appx. 397, 400 (2d Cir. 2009) (An alleged loss of property, "whether intentional or negligent – will not support a due process claim redressable under 🚩 § 1983 if 'adequate state post-deprivation remedies are available.' ") (quoting *Hudson*, 468 U.S. 533). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." 🚩 *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001). Because plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to 🚩 Section 1983. *See* 🚩 *Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983) (per curiam); *see also Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 360, 473-74 (S.D.N.Y. 1998) (dismissing the plaintiff's claim that defendants destroyed his eyeglasses in violation of his due process rights). Thus, plaintiff's due process claims related to his eyeglasses are dismissed pursuant to 🚩 28 U.S.C. §

**Houston v. Collerman, Not Reported in Fed. Supp. (2016)**

Case 5:23-cv-00731-BKS-ML    Document 7    Filed 12/21/23    Page 39 of 64

1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. SHU Confinement

**\*9** To establish a due process claim, plaintiff must establish: "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir. 2001) (citation and internal quotation marks omitted). In this case plaintiff alleges that the false misbehavior report resulted in a SHU sentence. [9]

A prisoner "has a liberty interest that is implicated by SHU confinement if it 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *J.S. v. T'Kach,* 714 F.3d 99, 106 (2d Cir. 2013) (quoting *Sandin v. Conner,* 515 U.S. 472, 484, (1995)); *see also Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir. 2004). In making this determination courts are to consider, "among other things, the duration and conditions of confinement." *J.S.,* 714 F.3d at 106; *Davis v. Barrett,* 576 F.3d 129, 133 (2d Cir. 2009). The conditions of confinement are to be considered "in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Davis,* 576 F.3d at 134; *Palmer,* 364 F.3d at 66 n.4.

Although the Second Circuit has "explicitly avoided" creating "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," the Court has established guidelines. *Palmer,* 364 F.3d at 65. W here the plaintiff is confined for "an intermediate duration –between 101 and 305 days – 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required.' " *Id.* (quoting *Colon v. Howard,* 215 F.3d 227, 234 (2d Cir. 2000)). While confinements for less than 101 days "under normal SHU conditions may not implicate a prisoner's liberty interest," such confinements "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of *Sealy* or a more fully developed record

showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer,* 364 F.3d at 65; *see Davis,* 576 F.3d at 133. [10]

**\*10** In this case, the duration of the confinement, 30 to 60 days, "was not long enough to constitute an atypical and significant deprivation by itself," and the Court therefore must "look to the conditions of confinement." *Palmer,* 364 F.3d at 66; *see also Davis,* 576 F.3d at 133. Plaintiff claims that while he was confined in the SHU, he was unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from his mental health program. *See* Compl. at 5, 10; Dkt. No. 1-1 at 1.

It is well established that prisoners do not have a constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex,* 442 U.S. 1, 7 (1979). "Where a state has created a statutory scheme for parole, the Due Process Clause protects prisoners insofar as they 'have a legitimate expectancy of release that is grounded in the state's statutory scheme.' " *Barna v. Travis,* 239 F.3d 169, 170–72 (2d Cir. 2001) (per curiam) (citing *Greenholtz,* 442 U.S. at 11–13). "New York's parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Barna,* 239 F.3d at 171. Plaintiff has also failed to plead that his inability to participate in mental health programs impacted a protected liberty interest. *See Nieves v. Prack,* No. 6:15-CV-6101, 2016 W L 1165820, at \*4 (W.D.N.Y. March 24, 2016) ("[Plaintiff's] claim that his inability ... to participate in various educational, vocational, rehabilitative or self-help programs might have hindered his ability to receive an early parole or release is ... speculative and fails to allege interference with a protected liberty interest.") (citations omitted). Here, the complaint lacks facts establishing when, how many times, and who deprived plaintiff of the right to attend his mental health program. With respect to plaintiff's religious claims, courts have found that the deprivation of communal religious services does not constitute an atypical and significant hardship. *See Arce v. Walker,* 139 F.3d 329, 336 (2d Cir. 1998) (finding that eighteen days in administrative segregation, including loss of exercise and access to religious services, did not constitute atypical and significant hardship); *Holland v. Goord,* No. 05-CV-6295, 2006 WL 1983382, at \*7 (W.D.N.Y. July 13, 2006) (holding the inability to attend Muslim services and celebrate the end of

Case 5:23-cv-00731-BKS-ML    Document 7    Filed 12/21/23    Page 40 of 64

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

Ramadan while confined in the SHU for seventy-seven days is not an atypical hardship).

Even assuming that plaintiff had pled facts sufficient to show that his confinement imposed an atypical and significant hardship, however, and therefore pled the existence of a valid liberty interest, the complaint fails to state a claim based upon the Fourteenth Amendment and due process. It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). In this case, a hearing regarding the charges was held within two days of plaintiff's receipt of the misbehavior report. Plaintiff does not allege that he was denied any procedural due process during that hearing. Moreover, the complaint lacks facts suggesting that any named defendant issued the misbehavior report or presided over the disciplinary hearings. Based upon the aforementioned, plaintiff's Fourteenth Amendment claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See Livingston v. Kelly*, 561 F.Supp.2d 329, 332 (W.D.N.Y. 2008) (dismissing plaintiff's false-report claims because the plaintiff failed to allege that the disciplinary hearings on the reports did not meet constitutional due process standards).

**E. Failure to Respond to Grievances and Failure to Investigate**

**\*11** Plaintiff also claims that his constitutional rights were violated because the facility grievance program is "never followed." *See* Compl. at 11. There is no constitutional right of access to the established inmate grievance program. *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at \*3 (N.D.N.Y. May 4, 2005) ("[p]articipation in an inmate grievance process is not a constitutionally protected right"); *Shell v. Brzezniak*, 365 F.Supp.2d 362, 369-70 (W.D.N.Y. 2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim"); *Cancel v. Goord*, No. 00. Civ. 2042, 2001 WL 303713, at \*3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983"); *Mimms v. Carr*, No. 09-CV-5740, 2011 W L 2360059, at \*10 (E.D.N.Y. June 9, 2011) ("It is well-established that prison grievance procedures do not create a due-process-protected liberty interest.") (citing cases). Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

To the extent that plaintiff attempts to assert a separate constitutional claim based upon the Inspector General's failure to investigate, the law is also clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases); *Torres v. Mazzuca*, 246 F.Supp.2d 334, 341-42 (S.D.N.Y. 2003) (Prisoners do not have a due process right to a thorough investigation of grievances.); *DeShaney v. Winnebego Soc. Servs.*, 489 U.S. 189, 196 (1989) (The Due Process Clause confers no right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual); *Pine v. Seally*, No. 9:09-CV-1198, 2011 W L 856426, at \*9 (N.D.N.Y. Feb. 4, 2011) ("the law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials") (citing *Bernstein*, 591 F.Supp.2d at 460).

In this regard, plaintiff's claims do not involve a constitutional violation and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**F. Cause of Action for Criminal Charges/Perjury**

"New York does not recognize a common law cause of action for [...] perjury." *Harris v. Summers*, No. 5:14-CV-0013 (LEK/DEP), 2014 W L 1340032, at \*5 (N.D.N.Y. Apr. 3, 2014) (citing *Carvel v. Ross*, No. 12-CV-0722, 2011 W L 856283, at \*12 (S.D.N.Y. Feb. 16, 2011) (dismissing the plaintiff's perjury claim because "there [is] no private right of action" for perjury)). Moreover, plaintiff's claim is not actionable because it is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual. *Harper v. New York Child Welfare Comm'rs*, No. 3:12-CV-0646 (NAM/DEP), 2012 WL 3115975, at \*4 (N.D.N.Y. May 14, 2012) (citing

Case 5:23-cv-00731-BKS-ML    Document 7    Filed 12/21/23    Page 41 of 64

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

*Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973)). Consequently, plaintiff's request to charge defendants with "perjury" is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### G. Injunctive Relief Against DOCCS

Plaintiff demands injunctive relief directing DOCCS to require "each officer" to wear body cameras to prevent future assaults and other related injunctive relief. *See* Compl. at 10-12. Plaintiff is presently confined at Mid-State C.F. and therefore, plaintiff's request for injunctive relief involving changes to the operation of security at Elmira C.F., is dismissed as moot. *See Edwards v. Horn,* No. 10 Civ. 6194, 2012 WL 760172, at *23 (S.D.N.Y. March 8, 2012) (dismissing the plaintiff's claim for injunctive relief because the plaintiff had been released from prison).

*12 Even assuming plaintiff's request is broader and intended to encompass all DOCCS facilities, the request is nonetheless improper and subject to dismissal. The PLRA provides "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of the particular plaintiff." 18 U.S.C. § 3626(a)(1)(A). "[A] proposed order directing the installation of securities cameras – is beyond the narrow scope permitted by the PLRA." *Barrington v. New York,* 806 F.Supp.2d 730, 750 (S.D.N.Y. 2011) (dismissing the plaintiff's request for injunctive relief seeking an order directing Green Haven to install security cameras as overly broad and unnecessary to correct the alleged past violations of his rights). Accordingly, plaintiff's request for injunctive relief is dismissed.

### VI. Conclusion

**ORDERED** that plaintiff's in forma pauperis application (Dkt. No. 2) is **GRANTED**; [11] and it is further

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form, and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) plaintiff's § 1983 claims for monetary damages against DOCCS; (2) constitutional claims based upon the failure to adhere to the grievance policy and investigate; and (3) plaintiff's claims related to perjury and filing criminal charges against defendants; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Eighth Amendment claims against defendants for deliberate indifference to plaintiff's serious medical needs; (2) First Amendment freedom of religion claims; (3) Fourteenth Amendment due process claims; and (4) claims for injunctive relief against DOCCS [12]; and it is further

**ORDERED** that DOCCS is **DISMISSED** as a defendant herein; and it is further

**ORDERED** that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) the Eighth Amendment use of excessive force claims against defendants Copestick and Schieber; (2) the Eighth Amendment failure-to-intervene claim against defendant Collerman; (3) the First Amendment retaliation claims against defendants Copestick and Schieber; and (3) the Fourteenth Amendment equal protection claims against Copestick and Schieber; and it is further

**ORDERED**, that the Clerk shall issue summons and forward them, along with copies of the Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the Summons and Complaint to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

*13 **ORDERED**, that a response to the complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

Case 5:23-cv-00731-BKS-ML    Document 7    Filed 12/21/23    Page 42 of 64

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED**, in accordance with 🚩 *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), the Clerk of the Court is directed to provide plaintiff with copies of opinions from Westlaw and the Federal Appendix cited in this Decision and Order; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

Dated: October 26, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 6267968

---

## Footnotes

1    On October 20, 2016, the Court issued a Decision and Order upon initial review of plaintiff's complaint. Dkt. No. 4. This Amended Decision and Order is issued to correct clerical errors in the Conclusion of the Order.

2    🚩 Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 🚩 28 U.S.C. § 1915(g). Based upon the Court's review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that plaintiff has accumulated three strikes for purposes of 🚩 28 U.S.C. § 1915(g).

3    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." 🚩 *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

4    Plaintiff annexed exhibits to the complaint. Dkt. No. 1-1. To the extent that the exhibits are relevant to the incidents described in the complaint, the Court will consider the complaint as well as any documents attached as exhibits. *See* 🚩 *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

5    The Use of Force report was not annexed as an exhibit to the complaint.

6    The name of the officer who served the misbehavior report is not clearly legible on the Hearing Disposition annexed as an exhibit. *See* Dkt. No. 1-1 at 10. Plaintiff does not allege that Copestick, Schieber, or Collerman

**Houston v. Coulterman, Not Reported in Fed. Supp. (2016)**

Case 5:23-cv-00731-BKS-ML   Document 7   Filed 12/21/23   Page 43 of 64

delivered the report. The disposition form indicates that the charges were reported by Schieber. *Id.* The misbehavior report was not annexed as an exhibit to the complaint.

7     The officer who presided over the hearing was a Captain at Elmira C.F. However, the name of the hearing officer is not clearly legible. *See* Dkt. No. 1-1 at 10-11.

8     The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in 🚩 *Emp't Div. v. Smith*, 494 U.S 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.' " 🚩 *Ford*, 352 F.3d at 592 (quoting 🚩 *Emp't Div.*, 494 U.S. at 887); *see also* 🚩 *Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); 🚩 *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

9     The complaint contains conflicting factual allegations related to the length of plaintiff's SHU confinement. Plaintiff claims that after "one month of being housed in SHU," he was released. *See* Compl. at 5. In the Third Cause of Action, plaintiff claims that he served "over 60 days in SHU." *See id.* at 9.

10     The Second Circuit has noted that "[i]n the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short –less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions." 🚩⚠️ *Palmer*, 364 F.3d at 65-66; *see* 🚩 *Davis*, 576 F.3d at 133. Absent allegations in the complaint that the conditions of confinement were in some way atypical, however, many courts in this Circuit have granted motions to dismiss claims by plaintiffs with confinement exceeding thirty days when the plaintiffs failed to allege that the conditions of confinement were in some way atypical. *See, e.g.,* 🚩 *Acevedo v. Fischer*, No. 12-CV-6866, 2014 WL 5015470 at *15 (S.D.N.Y. Sept. 29, 2014) (citing cases involving confinements of between forty and fifty days which were dismissed for failure to allege a protected liberty interest because there were no allegations of unusual confinement).

11     Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

12     If plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

---

**End of Document**          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by D'Attore v. Cucharella, N.D.N.Y., October 3, 2012

KeyCite Overruling Risk - Negative Treatment

Overruling Risk Darnell v. Pineiro, 2nd Cir., February 21, 2017

2011 WL 856426

Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.

James PINE, et al., Plaintiff,

v.

Greg SEALLY, et al., Defendants.

No. 9:09–CV–1198 (DNH/ATB).

|

Feb. 4, 2011.

**Attorneys and Law Firms**

Abul Labib, Wilton, NY, pro se.

Harold Burroughs, Jr., Dannemora, NY, pro se.

Cleon Taylor, Attica, NY, pro se.

Barry D. Irvis, Malone, NY, pro se.

Lee Goergen, Malone, NY, pro se.

Jonathan M. Bernstein, William J. Greagan, Goldberg, Segalla Law Firm, Adrienne J. Kerwin, Office of Attorney General Albany, NY, for Defendants.

**REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

*1 pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c). The case was transferred to me on January 4, 2010, following the retirement of U.S. Magistrate Judge Gustave J. Di Bianco. (Dkt. No. 15).

Plaintiffs filed this civil rights complaint, pursuant to 42 U.S.C. § 1983, regarding incidents that occurred during their incarceration at Greene County Jail ("Greene").[1] Robert Cuttita and Deborah Clark ("State Defendants") filed a motion to dismiss plaintiffs' complaint ("State Defendants' Motion") on March 17, 2010. (Dkt. No. 22). Defendants Peter Bennett, Hulbiki, John Jarvis, Donna Juliano, Ken Liese, Brian McMannis, Gregory Seeley, Donnie Skimmerhorn, Michael Spitz, Mike Sutherland, Edward Vorheese, Ed Warga, and Steven Worth ("County Defendants") filed a motion to dismiss plaintiff's complaint ("County Defendants' Motion") on April 15, 2010. (Dkt. No. 49). Plaintiff Burroughs filed a response (Burroughs's Response) to the State Defendants' Motion and the County Defendants' Motion on June 22, 2010. (Dkt. No. 55). The county defendants filed a memorandum of law in reply and in further support of their motion to dismiss. (Dkt. No. 69). Defendants Richard Hussey and Don Rivenburg ("Additional County Defendants") filed a motion to dismiss plaintiffs' complaint ("Additional County Defendants' Motion") with an accompanying memorandum of law on December 8, 2010. (Dkt. Nos.79, 80). Plaintiff Burroughs filed a response to the Additional County Defendants' Motion on December 29, 2010. (Dkt. No. 82).

**DISCUSSION**

**I. *Facts and Claims***

Plaintiffs divide the section of their complaint,[2] entitled "Facts," according to the claims they assert and the dates they associate with those claims.[3] Plaintiffs' first claim that from November 2006 to September 2007, they were "sexually harassed on a daily basis by defendant Beojekian, who would fondle his exposed penis during strip searches and at times touch [the plaintiffs]".[4] (Compl. p. 7).

Plaintiffs' second claim is that from December 2006 to October 2007, defendants Snyder, Hussey, Schnur, and Rivenburg "racially harassed [the plaintiffs] on several occasions ... by wearing a white sheet with a hood, carrying a noose ... [and] threaten[ed] to hang us because we were niggers and nigger lovers."[5] (Compl. p. 8).

Plaintiffs' third claim is that from October 2006 to August 2008, defendants Snyder, Skimmerhorn, Sutherland, McMannis, Jarvis, Voorheese, Rivernburg, Liese, and Warga assaulted plaintiffs "often," and spit in plaintiffs food or denied them food. (Compl. p. 8).

Plaintiffs' fourth claim is that from October 2006 to August 2008, defendants Seeley, Hussy, Schnur, Worth, and Spitz exposed plaintiffs to "unsanitary living conditions," where they were exposed to black mold, lead paint, and lead

pipes. (Compl. p. 9). Plaintiffs were also exposed to scabies, "Mercer [6]," crabs, bed bugs, "T.B." [7] hepatitis, and other diseases "due to there being no medical tier." (Compl. p. 9).

**\*2** Plaintiffs fifth claim is that from December 2006 to August 2008, defendants Seeley, Hussey, Worth, Spitz, Schnur, Rivenburg, Liese, Voorheese, Warga, Cuttita, and Clark did nothing to address plaintiffs' complaints of their rights being violated. (Comp. p. 9).

Plaintiffs' sixth claim is that from October 2006 to August 2008, defendants Hussey, Seeley, Worth, Spitz, Schnur, Cuttita, and Clark refused plaintiffs' requests for legal reference material, the law library is outdated and there is no law clerk. [8] (Compl. p. 10).

Plaintiffs' seventh claim is that from November 2006 to August 2008, defendants Hussey, Schnur, Rivenburg, Spitz, Liese, Warga, Voorhese, Bennett, Seeley, and Worth lost and misplaced plaintiffs' mail. (Compl. p. 10).

Plaintiffs' eighth claim is that from October 2006 to August 2008, defendants Seeley, Spitz, Hussey, and Worth did not have a "trained person" handling plaintiffs' medications, causing plaintiffs to "often" be sick from receiving the wrong medication. (Compl. p. 11).

Plaintiffs' ninth claim is that from October 2006 to August 2008, defendants Hussey, Seeley, Schnur, Spitz, Liese, Voorhese, Warga, Rivenburg, and Bennett denied plaintiffs "legal calls" to their attorneys and denied plaintiffs postage for legal mail. [9] (Compl. p. 11).

Plaintiffs' tenth claim is that from November 2006 to August 2008, defendant Warga refused to investigate any of the grievances plaintiffs filed. (Compl. p. 12).

Plaintiffs' eleventh claim is that from October 2006 to August 2008, defendants Hulbiki and Juliano "refused to properly treat [plaintiffs]" and refused to let plaintiffs "see an emergency room doctor until infections from [MRSA] spread, a hernia got worse, and blood began to leak out of the penis." (Compl. p. 12).

Plaintiffs twelfth claim is that from January 2008 to August 2008, defendants Seeley, Spitz, Worth, Liese, Warga, and Voorheese "locked in" plaintiffs, gave them no privileges, gave them only one hour of visitation per week, did not let plaintiffs make collect phone calls, refused to let plaintiffs

purchase stamps or hygiene items, prevented plaintiffs from communicating with their attorneys about plea bargains, and prevented plaintiffs from communicating with their loved ones at all. (Compl. p. 13).

Plaintiffs' thirteenth claim is that from October 2006 to August 2008, defendants Hussey, Seeley, Worth, Schnur, and Spitz denied plaintiffs "Elder 'Rastafarian' or Eman [sic] 'Muslim' services ... special diets, the right to Ramadan," and Jewish inmates were not allowed to celebrate Passover and were not given kosher diets. (Compl. p. 13).

### II. *Relief Sought*

Plaintiffs seek injunctive relief, [10] in addition to significant compensatory and punitive damages. Presently before the court are the County Defendants' Motion, [11] the State Defendants' Motion, and the Additional County Defendants' Motion to dismiss the complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). This court recommends that the State Defendants' Motion be granted, the Additional County Defendants' Motion be granted, and the County Defendants' Motion be granted in part and denied in part for the reasons discussed below.

### III. *Motion to Dismiss—Legal Standards*

**\*3** To survive dismissal for failure to state a claim, the complaint must contain When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. 🚩 *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citations omitted); 🚩 *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir.1995). The court must heed its particular obligation to treat *pro se* pleadings with liberality. 🚩 *Phillips v. Girdich,* 408 F.3d 124, 128 (2d Cir.2005); 🚩 *Tapia–Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999) (*per curiam* ).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits, and any statements or documents incorporated into the complaint by reference.

🚩 *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000); 🚩 *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72

(the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the motion to one for summary judgment).

### IV. *Conditions–of–Confinement*

Allegations of mistreatment of pretrial detainees in state custody are brought under the Due Process Clause of the Fourteenth Amendment. *See Caiozzo v. Korman,* 581 F.3d 63, 69 (2d Cir.2009). It has been held that because a pretrial detainee has not been "convicted," the proper inquiry is whether the conditions of confinement amount to punishment under the Due Process Clause, not whether the "punishment" is cruel and unusual under the Eighth Amendment. *See Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (contrasting sentenced prisoners with pretrial detainees). However, the same standard applies to claims of deliberate indifference to a serious threat to the health or safety of a person in custody, regardless of whether they are brought under the Eighth Amendment, relating to convicted prisoners, or under the Fourteenth Amendment for pretrial detainees. [12] *See Caiozzo v. Korman,* 581 F.3d at 72.

### A. Living Conditions1

Plaintiffs' fourth cause of action is based on alleged exposure to black mold, lead in pipes, and lead in paint while they were housed at Greene County Jail.

### 1. Legal Standards

To establish an Eighth Amendment or a Due Process claim based on unsafe or medically inappropriate living conditions, a plaintiff must establish that (1) he was incarcerated under conditions which posed a substantial risk of serious harm, and (2) prison officials acted with deliberate indifference to his health or safety. *See Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

"The deliberate indifference standard embodies both an objective and a subjective prong." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). Under the objective standard, a plaintiff must allege a deprivation "sufficiently serious" to constitute a constitutional violation. *Hathaway,* 37 F.3d at 66 (quoting *Wilson v. Seiter,* 501 U.S. at 298). In addition, "[b]ecause society does not expect or intend prison conditions to be comfortable, only extreme deprivations are

sufficient to sustain a 'conditionsofconfinement' claim." *Blyden v. Mancusi,* 186 F.3d 252, 263 (2d Cir.199) (citing *Hudson v. McMillan,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (only those deprivations denying "the minimal civilized measures of life's necessities" are sufficiently serious to form the basis of an Eighth Amendment violation) (internal quotations and citations omitted).

**\*4** The objective prong can be satisfied by conditions of confinement, which, when combined, "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise —for example, a low cell temperature at night combined with a failure to issue blankets." *Davidson v. Murray,* 371 F.Supp.2d 361, 370 (W.D.N.Y.2005). However, "[n]othing so amorphous as overall conditions can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.*

The subjective element of the Eighth Amendment analysis focuses on whether the defendant official acted with "a sufficiently culpable state of mind." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir.2006) (citing *Wilson v. Seiter,* 501 U.S. at 300). "Deliberate indifference" requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Farmer,* 511 U.S. at 835. In order for a prison official to act with deliberate indifference, he must know of and disregard an excessive risk to an inmate's health or safety. *Hathaway,* 37 F.3d at 66. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.*

Plaintiffs provide no specific facts other than "exposure," and list the names of jail personnel. In his response, plaintiff Burroughs states that the jail was under their "supervision" and they "did nothing to clean up" the mold or lead. (Dkt. No. 55, ¶ 21). Plaintiffs allege no injury or consequence resulting from their "exposure." This court does not find that plaintiffs allegations meet the objective prong required to establish a Constitutional violation, but even if the objective prong were met, plaintiffs have failed to show deliberate indifference on the part of the named defendants.

It is well-settled that personal involvement is required for assessments of damages in § 1983 actions. *See, e.g.,*

*Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (personal involvement is a prerequisite to the assessment of damages in a section 1983 case); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003). Plaintiffs have not shown how any of the named defendants were involved in the alleged exposure to lead and mold, other than listing their names, associated with the alleged exposure. *See, e.g., Green v. Bauvi,* 792 F.Supp. 928, 941–942 (S.D.N.Y.1992) (inmate may recover damages for unconstitutional conditions of confinement only from persons who created or were responsible for those conditions).

Plaintiffs' third cause of action is based on alleged denials of food, and that defendants Snyder, Skimmerhorn, Sutherland, McMannis, Jarvis, Voorheese, Rivernburg, Liese, and Warga spit in plaintiffs' food. Plaintiffs fail to indicate with any specificity which did a particular action and when it occurred. Plaintiffs' allegations are conclusory, and not sufficient to cross over the line into plausibility. Conclusory allegations are insufficient to state constitutional claims. *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987). Complaints relying on civil rights statutes must contain some specific allegations of fact indicating a deprivation of rights, instead of a "litany of general conclusions that shock but have no meaning." *Hunt v. Budd,* 895 F.Supp. 35, 38 (N.D.N.Y.1995) (citing *inter alia* *Barr v. Abrams,* 810 F.2d at 363). Therefore, plaintiffs' third and fourth causes of action based on their conditions of confinement should be dismissed.

### B. Excessive Force

**\*5** Plaintiffs' third claim is based in part on allegations of being "assaulted on a regular basis" by defendants Snyder, Skimmerhorn, Sutherland, McMannis, Jarvis, Voorheese, Rivernburg, Liese, and Warga between October 2006 to August 2008.

### 1. Legal Standards

Inmates enjoy Constitutional protection against the use of excessive force, and may recover damages under 42 U.S.C. § 1983 for a violation of those rights. *Hudson v. McMillian,* 503 U.S. 1, 9–10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." *Gregg v. Georgia,* 428 U.S.

153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir.2000). To sustain a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. *Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir.1999).

In order to satisfy the objective element of the constitutional standard for excessive force, the defendants' conduct must be " 'inconsistent with the contemporary standards of decency.' " *Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (citation omitted); *Hudson,* 503 U.S. at 9. "[T]he malicious use of force to cause harm constitute[s] [an] Eighth Amendment violation per se[,]" regardless of the seriousness of the injuries. *Blyden,* 186 F.3d at 263 (citing *Hudson,* 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson,* 503 U.S. at 9–10 (citations omitted). " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.' " *Sims,* 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Id.* at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Id.* (quoting *Hudson,* 503 U.S. at 7). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: the extent of the injury and the mental state of the defendant; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Scott v. Coughlin,* 344 F.3d 282, 291 (2d Cir.2003).

### 2. Application

Plaintiffs' general accusation of regular assault by a group of defendants, without more, is insufficient to state a plausible claim based on a use of excessive force. Plaintiffs allege no

specific injuries incurred by any particular plaintiff and allege no specific details about any particular assault by any named defendant. Plaintiffs' third claim based on a use of excessive force should be dismissed without prejudice.

### C. Medical Indifference

**\*6** Plaintiffs claim that Doctor Hulbiki and Nurse Juliano were deliberately indifferent to their medical needs because they did not treat them appropriately. Deliberate indifference to serious medical needs constitutes cruel and unusual punishment, in violation of the Eighth Amendment, as made applicable to the states through the Fourteenth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The standards applied to assess the adequacy of medical care provided to pretrial detainees under the Due Process Clause are the same as those applied to convicted prisoners under the Eighth Amendment. *Id.* at 69, 70–72; *Mayo v. County of Albany,* 357 Fed. Appx. 339, 341(2d Cir.2009).

### 1. Legal Standards

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, plaintiffs must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter,* 316 F.3d 178, 183–84 (2d Cir.2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing *inter alia Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998)).

The objective prong of the standard is satisfied "when (a) the prisoner was 'actually deprived of adequate medical care,' meaning prison officials acted unreasonably in response to an inmate health risk under the circumstances, and (b) 'the inadequacy in medical care is sufficiently serious.' *Bellotto v. County of Orange,* 248 Fed. Appx. 232, 236 (2d Cir.2007) (quoting *Salahuddin v. Goord,* 467 F.3d 263, 279–80 (2d Cir.2006)). If the "unreasonable care" consists of a failure to provide any treatment, then the court examines whether the inmate's condition itself is "sufficiently serious."

*Smith v. Carpenter,* 316 F.3d 178, 185–86 (2d Cir.2003). When a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," the court must focus on the seriousness of the particular risk of harm that resulted from the challenged delay or interruption, rather than the prisoner's underlying medical condition alone." *Id.* at 185. The standard for determining when a deprivation or delay in a prisoner's medical need is sufficiently serious, contemplates a condition of urgency that may result in degeneration of the patient's condition or extreme pain. *Bellotto v. County of Orange,* 248 Fed. Appx. at 236 (citing *Chance v. Armstrong,* 143 F.3d at 702 and *Smith v. Carpenter,* 316 F.3d at 187 (actual medical consequences are highly relevant)).

The subjective prong of the deliberate indifference test is satisfied when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A plaintiff is not required to show that a defendant acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result," but must show that the official was aware of facts from which one could infer that "a substantial risk of serious harm" exists, and that the official drew that inference. *Id.* at 835, 837.

**\*7** A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference. *Chance v. Armstrong,* 143 F.3d at 703. Nor does the fact that an inmate feels that he did not get the level of medical attention he deserved, or that he might prefer an alternative treatment, support a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services,* 151 F.Supp.2d 303, 311 (S.D.N.Y.2001) (citing *Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986)). Even negligence in diagnosing or treating an inmate's medical condition does not constitute deliberate indifference. *Farmer v. Brennan,* 511 U.S. at 835. Thus, any claims of medical malpractice, or disagreement with treatment are not actionable under Section 1983. *Ross v. Kelly,* 784 F.Supp. 35, 44–45 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (1992) (table).

**2. Application**

Plaintiffs' fourth claim is based in part on alleged exposure to various parasites and diseases. Plaintiffs' eighth claim is based on defendants Seeley, Spitz, Hussey, and Worth, supervisors at Greene County Jail, failure to properly supervise correctional officers dispensing medication, causing plaintiffs to receive incorrect medication and become sick. (Compl. p. 12, Dkt. No. 55, ¶ 65–66). Plaintiffs' eleventh claim is based on alleged MRSA infections, a reference to "blood began to leak out of the penis" and plaintiff Burroughs' hernia. (Compl. p. 12). As to the exposure to various parasites and diseases, plaintiffs allege no specific injury, not indicating who, if anyone, had MRSA or blood leaking out of his penis and the requisite deliberate indifference to that medical need.

Plaintiff Burroughs alleges that after he tested positive for tuberculosis, Doctor Hulbiki and Nurse Juliano failed to give him medicine. (Burroughs's Response ¶ 33–34). Plaintiff Burroughs attaches a copy of the form indicating his positive test for tuberculosis. (Burroughs's Response Exhibit B). However, this only establishes that he was seen by medical professionals, and he tested positive for tuberculosis. Plaintiff Burroughs does not indicate if he suffered from any symptoms of tuberculosis. He only states that he was housed with other inmates after receiving his diagnosis. [13] Because plaintiff Burroughs fails to allege any injury resulting from his diagnosis, he has failed to establish anything other than a disagreement with how medical professionals chose to treat him, which, as explained above, is insufficient to state a claim for deliberate indifference to a serious medical need.

Plaintiff Burroughs' hernia is a different matter. Burroughs alleges that he met with Dr. Hulbiki on several occasions for treatment of his hernia, which was the "size of a softball." [14] (Burroughs's Response ¶ 74). Burroughs alleges that he received no treatment for the attendant pain and it was only after a court order that he was able to get surgery for his hernia at Columbia Hospital in Hudson, New York. (Burroughs's Response ¶¶ 76–77). After his hernia surgery, plaintiff Burroughs alleges that Dr. Hulbiki and Nurse Juliano failed to give him his prescribed pain medication, and the correctional officers who dispense medication failed to give him his prescribed pain medication. (Burroughs's Response ¶¶ 67, 69–70). He also alleges that the correctional officers "would hear me crying from the pain after my surgery and I would hear them laughing at me." (Burroughs's Response ¶ 68). However, plaintiff Burroughs does not specify which

correctional officers were aware of his serious pain and ignored it. [15]

**\*8** Plaintiff Burroughs has sufficiently stated a claim for deliberate indifference to a serious medical need as to Doctor Hulbiki and Nurse Juliano. Defendants' motion to dismiss plaintiff Burroughs' Eighth Amendment claim of deliberate indifference to his serious medical need based on his hernia and extreme pain from hernia surgery should be denied.

**D. Harassment**

Plaintiffs' first cause of action is based on the alleged inappropriate touching that occurred between November 2006 to September 2007.

While allegations of sexual abuse may, in some circumstances, violate the Eighth Amendment, isolated incidents of harassment, involving verbal harassment and touching are not severe enough to be "objectively, sufficiently serious." Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir.1997) (quoting Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). In order to violate the Eighth Amendment, the "punishment" must be "objectively, sufficiently serious," and the official must have had a "sufficiently culpable state of mind." Id. (citing Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). The plaintiff in Boddie was also claiming an Eighth Amendment violation based upon allegations of sexual abuse. Id. The court held that the "isolated episodes of harassment and touching alleged by Boddie are despicable and, if true, they may potentially be the basis of state tort actions. But they do not involve a harm of federal constitutional proportions ...." Id .

In this case, plaintiffs allege that defendant Beojekian conducted strip frisks that rose to the level of sexual harassment. Pursuant to Boddie, allegations such as those made by plaintiffs do not rise to the level of constitutional violations regardless of the impropriety of the action. [16] Id. Thus, plaintiffs' claim based on sexual harassment should be dismissed.

Plaintiffs' second cause of action is based on alleged racial slurs and threats made between October 2006 and August 2008. However, verbal harassment, "unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem does not constitute the

violation of any federally protected right and, therefore, is not actionable under ... § 1983." *Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N.Y.1998); *see also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) (a guard calling a plaintiff names did not establish any "appreciable injury" and dismissal of the claim was proper). Plaintiffs in this case did not assert, nor does the record support, any allegations of physical injury related to the verbal harassment, however inappropriate it might have been. Even accepting plaintiffs' allegations as true, this court finds that plaintiffs have failed to state a claim, and their second cause of action based on verbal harassment should be dismissed.

### V. *Grievances and Investigations*

Plaintiffs' fifth and tenth causes of action pertain to grievances and defendants' alleged failure to respond or investigate them. The law is well-settled that inmates do not have a constitutional right to grievance procedures. *Torres v. Mazzuca,* 246 F.Supp.2d 334, 342 (S.D.N.Y.2003); *Davis v. Buffardi,* No. 0:01–CV–0285, 2005 U.S. Dist. LEXIS 45487, 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) (Magnuson, J.) ("[p]articipation in an inmate grievance process is not a constitutionally protected right") (citations omitted). Furthermore, a violation of the inmate grievance procedures does not give rise to a claim under section 1983. *Cancel v. Goord,* No. 00 CIV.2042, 2001 U.S. Dist. LEXIS 3440, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001).

**\*9** To the extent that plaintiffs attempt to assert a separate constitutional claim of "failure to investigate," the law is also clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *Bernstein v. New York,* 591 F.Supp.2d 448, 460 (S.D.N.Y.2008) (collecting cases). In order for a constitutional violation to have occurred, the investigation *itself* must have resulted in a deprivation of a constitutional right. *Faison v. Hash,* 03–CV–6475P, 2004 U.S. Dist. LEXIS 29151 at *6, 2004 WL 944523 (W.D.N.Y. Apr.23, 2004) (citing *Malloy v. City of New York,* 1996 U.S. Dist. LEXIS 16417 at *6, 1996 WL 648927 (S.D.N.Y. Nov.7, 1996) (holding that warden's alleged failure to investigate assault by correctional officer did not give rise to constitutional violation, where plaintiff failed to show that warden could have anticipated or had other direct involvement in the assault); *Gomez v. Whitney,* 757 F.2d 1005 (9th Cir.1985) (a claim against a police department

for failure to investigate is insufficient to state a civil rights claim without another recognized constitutional right being involved).

First, contrary to plaintiffs' allegations that defendants failed to investigate, Beojekian's Arrest Report, [17] submitted as Exhibit A to plaintiff Burroughs's own opposition papers (Dkt. No. 55), indicates that an investigation was conducted and mentions that Aaron Beojekian "had numerous allegations regarding sexual misconduct with the inmates." (Pls' Opp. to Mot. to Dismiss, Ex. C). In any event, plaintiffs had no constitutional right to any investigation of their grievances. Accordingly, plaintiffs' claims based on the alleged failure to investigate their grievances may be dismissed for failure to state a constitutional claim.

### VI. *Mail Tampering and Access to Courts*

Plaintiffs allege that their access to the courts was hindered due to the alleged inadequacy of the law library at the Greene County Jail. Plaintiffs also claim that they were not permitted to contact their attorneys as much as they would have liked.

In order to establish a claim that a prisoner's right of access to the courts has been violated, actual injury must be shown. *See Lewis v. Casey,* 518 U.S. 343, 351–52, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Inmates' right of access to the courts is not "an abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis,* 518 U.S. at 351–54. To establish a violation, "the inmate ... must ... demonstrate that the alleged shortcomings ... hindered his efforts to pursue a legal claim." *Lewis,* 518 U.S. at 351. The same standard applies when inmates claim that legal mail has been obstructed. *See Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003). Plaintiffs must allege that the defendants' actions hindered their "efforts to pursue a legal claim." *Id.* (citing *Monsky v. Moraghan,* 127 F.3d 243, 247 (2d Cir.1997).

**\*10** Prior to the Supreme Court's decision in *Lewis,* the Second Circuit had held that "an isolated instance" of interference with an inmate's legal mail delivery was insufficient to state a First Amendment claim, either with respect to the mail itself or with respect to access to courts, where "the infraction was not in accordance with

official policy or practice and where no showing had been made that the inmate's right to access to courts was chilled...." *Washington v. James,* 782 F.2d 1134, 1139 (2d Cir.1986) (citation omitted). *Lewis* also suggests that the actual harm must be to direct or collateral attacks on the inmate's conviction, or to a challenge to the conditions of confinement. *518 U.S. at 355.* "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.' " *Davis v. Goord,* 320 F.3d at 352 (citing *Jermosen v. Coughlin,* 877 F.Supp. 864, 871 (S.D.N.Y.1995)).

Plaintiffs' right of access to the courts was not abridged in any way by defendants' actions, even assuming that plaintiffs' allegations are true. Plaintiffs' allegations are conclusory statements that the law library is "inadequate," and "outdated." (Compl. p. 11). If, as their allegations suggest, plaintiffs had been appointed attorneys, no access to any law library was required. *See Bourden v. Loughgren,* 386 F.3d 88, 93 (2d Cir.2004) ("the appointment of counsel can be a valid means of satisfying a prisoner's right of access to the courts").

Plaintiffs only allegations of injury is that they were "unable to file motions on our behalf that could have been fruitful to our criminal cases." (Compl. p. 11). These allegations are insufficient to state a plausible claim for denial of access to the courts. Accordingly, plaintiffs' sixth, seventh, ninth, and twelfth claims related to the alleged deficiencies in the quality of the law library, the lack of access to legal materials, and limited access to attorneys should be dismissed.

## VII. *First Amendment*

Plaintiffs' thirteenth claim is based on defendants' alleged violation of the Free Exercise Clause of the First Amendment. The First Amendment guarantees the right to the free exercise of religion. *Cutter v. Wilkinson,* 544 U.S. 709, 719, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir.2003) (citing *Pell v. Procunier,* 417 U.S. 817, 822 (1974)). This right "is not absolute or unbridled, and is subject to valid penological concerns, including those relating to institutional security." *Johnson v. Guiffere,* 04–CV–57, 2007 WL 3046703, at *4, 2007 U.S. Dist. LEXIS 77239 (N.D.N.Y. Oct.17, 2007). The Free Exercise Clause extends

"beyond mere attendance at congregate religious services into other aspects of prison life including, pertinently, that of an inmate's diet...." *Id.* The Second Circuit has held that it is "clearly established that a prisoner has a right to a diet consistent with his or her religious scruples...." *Ford,* 352 F.3d at 597 (citations omitted). Therefore, to "deny prison inmates the provision of food that satisfies the dictates of their faith ... unconstitutionally burden[s] their free exercise rights." *McEachin v. McGuinnis,* 357 F.3d 197, 203 (2d Cir.2004).

*11 Plaintiffs do not specify who among them, if any, is Rastafarian, Muslim, or Jewish. They do not specify who denied them meals appropriate to their specific religious beliefs and how their specific religious beliefs were abridged, other than conclusory allegations of denial of Rastafarian or Muslim services, special diets, or celebration of Ramadan or Passover. The defendants that plaintiffs associate with these allegations are Sheriff Hussey, Sheriff Seeley, Undersheriff Worth, Superintendent Spitz, and Lieutenant Schnur. Each defendant's duties is described as "manages the jail's daily operations and executes the jail's policies." (*See Civil Cover Sheet,* Dkt. No. 1–1 at ¶¶ 1–4, 14). Plaintiffs appear to be attempting to establish personal involvement based on these defendants' supervisory roles at Greene County Jail. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (holding that a position in a hierarchical command structure, without more, is insufficient to establish personal involvement). Plaintiffs' allegations are insufficient to establish personal involvement on the part of the named defendants, and do not cross the line into plausibility to render them adequate enough to state a claim. Plaintiffs' thirteenth claim should be dismissed.

## VII. *Qualified Immunity*

Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). However, even if the constitutional privileges are clearly established, a government actor may still be shielded by qualified immunity "if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d

Cir.1991) (citing *Magnotti v. Kuntz,* 918 F.2d 364, 367 (2d Cir.1990).

In determining whether qualified immunity applies, the court may first consider whether "the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), modified by *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 811, 172 L.Ed.2d 565 (2009) (holding that, "while the sequence set forth [in Saucier] is often appropriate, it should no longer be regarded as mandatory in all cases"). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201. This court need not address qualified immunity with respect to those of plaintiff's claims which do not state actionable violations of his constitutional rights.

As to plaintiff's deliberate indifference claims against defendants Hulbiki and Juliano, it was clearly established, as of the time of the alleged incidents in 2007, that plaintiffs had a Constitutional right to be free from deliberate indifference to their medical needs. *See, e.g., Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Smith v. Carpenter,* 316 F.3d 178 (2d Cir.2003). Thus, accepting plaintiff's allegations as true, qualified immunity cannot protect defendants Hulbiki and Juliano at this time, because a reasonable person in their position would or should have known that deliberate indifference to medical needs was a constitutional violation.

**\*12 WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that the State Defendants' Motion (Dkt. No. 22) be **GRANTED,** and plaintiffs' claims as to defendants Robert Cuttita and Deborah Clark be **DISMISSED IN THEIR ENTIRETY,** and it is further

**RECOMMENDED,** that the Additional County Defendants' Motion (Dkt. No. 79) be **GRANTED,** and plaintiffs' claims as to defendants Peter Bennett, John Jarvis, Ken Liese, Brian McMannis, Gregory Seeley, Donnie Skimmerhorn, Michael Spitz, Mike Sutherland, Edward Vorheese, Ed Warga, and Steven Worth be **DISMISSED IN THEIR ENTIRETY,** and it is further

**RECOMMENDED,** that county defendants' motion to dismiss (Dkt. No. 49) be **GRANTED IN PART AND DENIED IN PART** and all plaintiffs' claims be **DISMISSED IN THEIR ENTIRETY** as to all defendants except for plaintiff Burroughs' claim based on deliberate indifference to his serious medical need as to defendants Hulbiki and Juliano.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roland v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 856426

---

### Footnotes

1    Plaintiffs are currently in the custody of the New York State Department of Correctional Services ("DOCS"), with the exception of Lee Goergen, who has been released on parole and has not updated his address with the court. *See* http://nysdocslookup.docs.state.ny.us.

2    Plaintiff Lee Goergen filed a motion to intervene (Dkt. No. 20) that was granted on April 6, 2010. (Dkt. No. 46). Plaintiff Goergen filed his complaint on April 6, 2010, which is in all respects identical to the complaint

3 filed at Docket No. 1, with his name added as a plaintiff. For ease of reference, the court will only refer to the complaint filed at Docket No. 1.

3 Plaintiffs do not number the paragraphs or pages in their complaint, so the court will refer to material by citing to the page number assigned by the Case Management/Electronic Case Files (CM/ECF) system.

4 As described above in the facts, Beojekian is the only person involved in the alleged touching. The court assumes that plaintiff lists the other individuals in an attempt to establish supervisory liability based on their knowledge of Beojekian's history. *See Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986) (supervisory liability can be established if (1) that official directly participated in the infraction; (2) after learning of a violation through a report or appeal, he or she failed to remedy the wrong; (3) the official created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue; or (4) he or she was grossly negligent in managing subordinates who caused the unlawful condition or event). Because the court is recommending dismissal on the merits of plaintiffs' claims, no analysis of personal involvement is necessary.

5 Although plaintiffs' cause of action is not clear, it appears from plaintiff Burroughs' response filed at Docket No. 55 that defendant Snyder was the person who actually made the threats, and plaintiff lists the other people in an attempt to establish supervisory liability. *See* Dkt. No. 55, ¶ 10; note 4, *supra,* and accompanying text.

6 The court assumes plaintiffs mean "MRSA," or methicillin-resistant staphylococcus aureus.

7 Tuberculosis.

8 It is unclear who denied legal materials to the plaintiffs.

9 Again, it is unclear who denied plaintiffs legal calls or postage for legal mail.

10 Plaintiffs seek injunctive relief for each of their claims, but because they are no longer being held at Greene County Jail, their claims for injunctive relief are moot. *See Thompson v. Choinski,* 525 F.3d 205, 209 (2d Cir.2008) (plaintiff's transfer moots his claims related to his conditions of confinement claims); *Mawhinney v. Henderson,* 542 F.2d 1, 2 (2d Cir.1976) (plaintiff's transfer moots claims for injunctive relief). sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp.,* 550 U.S. at 555 (citation omitted).

11 Plaintiffs have failed to serve defendants Snyder and Schnur, who therefore are not participating in the motions to dismiss. Failure to serve these defendants could be grounds for dismissal pursuant to Fed.R.Civ.P. 4(m), but because the court is recommending dismissal of all plaintiffs' complaints for failure to state a claim except for one that does not involve defendant Snyder or Schnur, it also recommends dismissing the complaint as to the unserved defendants for failure to state a claim pursuant to 28 U.S.C.1915(e)(2)(B)(ii). This section provides that the court may dismiss an *in forma pauperis* action *sua sponte* at any time if the court determines that, *inter alia,* the action fails to state a claim on which relief can be granted.

12 Because the due process rights of pretrial detainees are "at least as great as the Eighth Amendment protections available to a convicted prisoner," and the same standard applies, cases cited that refer to the

Eighth Amendment are thus applicable to the conditions of confinement claims alleged here. 🚩 *Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983).

13  Plaintiff Burroughs appears to be attempting to assert the rights of other inmates. However, a litigant has no standing to assert the constitutional rights of others. *Carlen v. Department of Health Services of Suffolk,* 912 F.Supp. 35, 42

14  Plaintiff Burroughs clarifies the details of his claim in his response. As noted by the court in *Benitez v. Ham,* "the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint." No. 9:04–CV–1159, 🚩 2009 WL 3486379, at *8 (N.D.N.Y. October 21, 2009) (citing, *inter alia,* 🔺 *Washington v. James,* 782 F.2d 1134, 1138–39 (2d Cir.1986)).

15  Plaintiff Burroughs is not attempting to sue the correctional officers who allegedly heard him.

16  The court notes that numerous courts have held that allegations of sexual abuse during frisk searches do not implicate the Eighth Amendment. *See Morrison v. Cortright,* 397 F.Supp.2d 424 (W.D.N.Y.2005) (allegation that correctional officer shone light up inmate's anus, ran his middle finger between inmate's buttocks, causing inmate to urinate on himself, and rubbed his penis against inmate's buttocks during strip frisk failed to implicate the Eighth Amendment); *Davis v. Castleberry,* 364 F.Supp.2d 319, 321 (W.D.N.Y.2005) (allegation that correction officer grabbed inmate's penis during pat frisk insufficient); 🚩 *Montero v. Crusie,* 153 F.Supp.2d 368 (S.D.N.Y.2001) (allegation that correctional officer, on several occasions, squeezed inmate's genitalia during pat frisks did not implicate the Eighth Amendment, especially when inmate did not allege physical injury); 🚩 *Williams v. Keane,* No. 95 Civ. 379, 1997 U.S. Dist. LEXIS 12665, 1997 WL 527677, at * 11 (S.D.N.Y. Aug.25, 1997) (allegation that correctional officer put his hand down inmate's pants and fondled inmate's genitals during frisk search failed to implicate the Eighth Amendment).

17  Beojekian was arrested on January 10, 2008, and the report indicates that the reasons for the arrest were the allegations of sexual misconduct by Beojekian involving inmates at the Greene County Jail. (E.D.N.Y.1996) (citing 🚩 *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

---

**End of Document**                               © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2004 WL 2271383

Only the Westlaw citation is currently available.

United States District Court,

W.D. New York.

Larry PORTER, 88–A–4542, Plaintiff,

v.

Glenn GOORD, Donald Selsky, John Doe (I.G.), Michael
P. McGinnis, Barry Cadell, James P. Waite, Rocky
L. Hazelton, Richard Moriarity, Mark S. Shumaker,
Jula Heyward, Karen Dyal, Paul Weed, Charle Worle,
Richard Augustine and James Casselberry, Defendants.

No. 04–CV–0485F.
|
Oct. 5, 2004.

**Attorneys and Law Firms**

Larry Porter, Pine City, NY, pro se.

MEMORANDUM and ORDER

ELFVIN, J.

*INTRODUCTION*

**\*1** Plaintiff Larry Porter, an inmate of the Southport
Correctional Facility, has filed this *pro se* action seeking relief
under 42 U.S.C. § 1983 (Docket No. 1) and has both
requested permission to proceed *in forma pauperis* and filed
a signed Authorization (Docket No. 2). Plaintiff has also filed
a motion for appointment of counsel (Docket No. 3), which
is denied without prejudice inasmuch as the Court finds that
the complaint fails to state a claim upon which relief can
be granted and, unless plaintiff files an amended complaint
which properly sets forth a procedural due process claim, this
action will be dismissed with prejudice. It is the plaintiff's
responsibility to retain an attorney or press forward with this
lawsuit *pro se.* 28 U.S.C. § 1654.

Plaintiff claims that the defendants, both supervisory and
non-supervisory officials of the New York State Department
of Correctional Services, violated his constitutional right to
due process in relation to a Tier III Superintendent's Hearing
held on July 18, 2002, which arose out of an alleged assault
and a misbehavior report issued on July 2, 2002. Plaintiff

alleges that the defendants violated his right to due process
when they, *inter alia,* failed to conduct an investigation
into the alleged assault, failed to pursue criminal charges
against the correctional officers who were involved in the
assault, provided false information, and testified falsely at the
Superintendent's Hearing, all in furtherance of a conspiracy
to cover up for the "criminal activities" of the correctional
officers allegedly involved in the assault that led to issuance
of the misbehavior report. He also alleges that the Hearing
Officer refused to call certain witnesses he had requested be
called to testify at the Hearing and relied on false testimony
and documents in rendering his decision, and that the Deputy
Commissioner failed to fairly review his appeal of the
Superintendent's Hearing. For the reasons discussed below,
plaintiff's request to proceed as a poor person is granted, and
unless plaintiff files an amended complaint as directed below,
the complaint will be dismissed with prejudice pursuant to §§
1915(e)(2)(B) and 1915A.

*DISCUSSION*

Because plaintiff has met the statutory requirements of 28
U.S.C. § 1915(a) and filed an Authorization with respect
to this action, plaintiff is granted permission to proceed *in
forma pauperis.* Sections 1915(e)(2)(B) and 1915A(a) of
28 U.S.C. require the Court to conduct an initial screening
of this complaint. In evaluating the complaint, the Court
must accept as true all factual allegations and must draw all
inferences in plaintiff's favor. *See King v. Simpson,* 189
F.3d 284, 287 (2d Cir.1999). Dismissal is not appropriate
"unless it appears beyond doubt that the plaintiff can prove no
set of facts in support of his claim which would entitle him to
relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99,
2 L.Ed.2d 80 (1957); *and see Chance v. Armstrong,* 143
F.3d 698, 701 (2d Cir.1998).

**\*2** Plaintiff brings this action pursuant to 42 U.S.C. §
1983. "To state a valid claim under 42 U.S.C. § 1983,
the plaintiff must allege that the challenged conduct (1) was
attributable to a person acting under color of state law, and
(2) deprived the plaintiff of a right, privilege, or immunity
secured by the Constitution or laws of the United States."
*Whalen v. County of Fulton,* 126 F.3d 400, 405 (2d.
Cir.1997) (citing *Eagleston v. Guido,* 41 F.3d 865, 875–76

(2d Cir.1994)). Based on its evaluation of the complaint, the Court finds that several of plaintiff's claims must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) because they fail to state a claim upon which relief may be granted. In addition, the Court finds that the remainder of plaintiff's claims must be dismissed unless plaintiff files an amended complaint as directed below.

A. Plaintiff's Allegations

The allegations in the complaint all relate to a Superintendent's Hearing held on September 18, 2002. The Superintendent's Hearing arose out of a misbehavior report regarding an incident that occurred on July 2, 2002, which apparently involved an assault that led to a number of correctional officers and plaintiff receiving medical treatment. Plaintiff claims that all of the defendants conspired, in various ways, to deny him of his right to due process at the Hearing in order to cover up the criminal activities of some of the defendants presumably involved in the incident of July 2, 2002. Plaintiff alleges that the defendants violated his right to due process in a variety of ways. He claims that the defendants failed to conduct an investigation into the incident or to pursue criminal charges against the correctional officers involved in the incident of July 2, 2002, submitted false misbehavior reports, false statements or documents, and testified falsely at the Hearing. He also alleges that the Hearing Officer, Cappell, refused to allow certain witnesses to testify at the Hearing and relied on false and inaccurate reports and testimony, and that defendant Selsky failed to fairly review his appeal of the disposition of the Superintendent's Hearing. The complaint does not set forth the results of the Hearing or allege that plaintiff suffered from an "atypical and significant hardship" as a result of the disposition following the Superintendent's Hearing. *See* Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

The gravamen of the complaint is that plaintiff was denied his rights to due process at the Superintendent's Hearing but the complaint fails to sufficiently set forth a claim of a violation of due process. Initially, the complaint fails to state what the disposition and sentence following the Superintendent's Hearing was. "[I]t has long been clear that inmates retain due process rights in prison disciplinary hearings," Hanrahan v. Doling, 331 F.3d 93, 97 (2d Cir.2003), and that these due process protections apply only where disciplinary proceedings may lead to the loss of good time, *see* Wolff v. McDonnell, 418 U.S. 539, 557, 94

S.Ct. 2963, 41 L.Ed.2d 935 (1974); Superintendent v. Hill, 472 U.S. 445, 453–54, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), or would subject an inmate to confinement in a Special Housing Unit. *See* Kalwasinski v. Morse, 201 F.3d 103, 108 (2d Cir.1999); McCann v. Coughlin, 698 F.2d 112, 121–22 (2d Cir.1983). Inmates are entitled to advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken. *See* Kalwasinski, 201 F.3d at 108.

**\*3** In Sandin, 515 U.S. at 484, the Supreme Court ruled that the Constitution did not require procedural due process protections unless the confinement subjected the prisoner to "atypical and significant hardship ... in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.[1] Thus, in order to allege a cognizable due process claim, a § 1983 plaintiff must show that the "conditions of his [disciplinary] confinement ... were dramatically different from the basic conditions of [his] indeterminate sentence." Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996). Therefore, unless plaintiff files an amended complaint by November 5, 2004, that factually alleges that he suffered a deprivation or punishment that was an "atypical and significant hardship" in relation to the ordinary conditions of his confinement and sets forth what specific procedural rights he claims he was denied, this action will be dismissed with prejudice.

With respect to plaintiff's allegations that the defendants engaged in a conspiracy to deprive him of his due process rights when they (1) failed to conduct an investigation or pursue a criminal complaint against the correctional officers involved in the assault, (2) failed to provide truthful information in relation to certain documents including, but not limited to, the misbehavior report and medical records of plaintiff's treatment following the assault, that were used in making a determination following the Superintendent's Hearing, and (3) testified falsely at the Hearing, said claims must be dismissed with prejudice because they fail to state a procedural due process claim. "[A] prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," Freeman v.

*Rideout,* 808 F.2d 949, 951 (2d Cir.1986), *cert. denied,* 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484, and, therefore, a claim of false testimony by a correctional officer witness at a disciplinary hearing, in and of itself, does not state a cognizable claim that plaintiff's due process rights were violated. The only constitutional violation that could occur in this situation is if plaintiff were not provided adequate due process in the proceeding, and then the claim is not based on the truth or falsity of the testimony but instead on the conduct of the hearing itself. Accordingly, any and all claims based on allegations that the defendants testified falsely or provided false information in relation to the incident on July 2, 2002, must be dismissed because they fail to state a claim of a violation of plaintiff's due process rights.

Moreover, a private citizen is not constitutionally entitled to a criminal investigation or the pursuit of a criminal prosecution, *see* Linda R.S. v. Richard D., 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973), and, therefore, plaintiff's claims relating to defendants' failure to conduct an investigation or to pursue a "felony complaint" are not cognizable under § 1983 and must be dismissed with prejudice.

## CONCLUSION

**\*4** Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization, his request to proceed *in forma pauperis* is granted. For the reasons set forth above, plaintiff's complaint must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A unless he files an amended complaint by November 5, 2004, in which he includes the necessary allegations regarding his claim that his rights to procedural due process were violated in relation to the Superintendent's Hearing held on September 18, 2002, as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any and all other claims are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

Plaintiff is advised that an amended complaint is intended to *completely replace* the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *International Controls Corp. v. Vesco,* 556 F.2d 665, 668 (2d Cir.1977), *cert. denied sub nom., Vesco & Co., Inc. v. International Controls Corp.,* 434 U.S. 1014, 98 S.Ct. 730, 54

L.Ed.2d 758 (1978); *see also* Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir.1994). Therefore, plaintiff's amended complaint must include all of the allegations against each of the defendants against whom the case is going forward so that the amended complaint may stand alone as the sole complaint in this action which the defendants must answer.

Plaintiff is forewarned that if he fails to file an amended complaint as directed, the complaint will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). Plaintiff is further forewarned that his right to pursue further relief in federal court at public expense will be greatly curtailed if he has three actions or appeals dismissed under the provisions of 28 U.S.C. § 1915(e)(2)(B). *See* 28 U.S.C. § 1915(g).

## ORDER

IT HEREBY IS ORDERED, that plaintiff's motion to proceed *in forma pauperis* is granted;

FURTHER, that plaintiff is granted leave to file an amended complaint as directed above with regard to his claims that he was denied procedural due process in relation to the Superintendent's Hearing held on September 18, 2002, by November 5, 2004, and that all other claims alleged in the complaint are dismissed with prejudice;

FURTHER, that the Clerk of the Court is directed to send to plaintiff with this order a copy of the original complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint;

FURTHER, that in the event plaintiff fails to file an amended complaint as directed above by November 5, 2004, the complaint shall be dismissed with prejudice without further order of the Court;

FURTHER, that in the event the complaint is dismissed because plaintiff has failed to file an amended complaint by November 5, 2004, the Clerk of the Court shall close this case as dismissed with prejudice without further order; and

FURTHER, that in the event the complaint is dismissed because plaintiff has failed to file an amended complaint by November 5, 2004, the Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would

not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. 🚩 *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

**\*5** SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 2271383

## Footnotes

1    *Sandin* compared inmates in the SHU for disciplinary purposes to inmates in both the general inmate population and those in administrative segregation and protective custody. 🚩 515 U.S. at 485–86, 115 S.Ct. at 2301. Based on that comparison, the Court held that the plaintiff's 30–day SHU punishment did not "work a major disruption in his environment," 🚩 *id.* at 486, 2301, and was "within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life," 🚩 *id.* at 487, 2302.

End of Document                                © 2023 Thomson Reuters. No claim to original U.S. Government Works.

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the

additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss— the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right.

*See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." Smiley v. Davis, 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge

recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See* Camardo v. General Motors Hourly–Rate Employees Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); Chambrier v. Leonardo, 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); Schoolfield v. Dep't of Correction, 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); Vargas v. Keane, 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also* Scipio v. Keane, 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P.

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 5:23-cv-00731-BKS-ML    Document 7    Filed 12/21/23    Page 61 of 64

72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

 **\*3**  Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.


CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.


**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.


BACKGROUND

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

 **\*4**  Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams,

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 5:23-cv-00731-BKS-ML   Document 7   Filed 12/21/23   Page 62 of 64

the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

 **\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See* LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing Ricciuti v. New York City Transit Authority, 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. Gill v. Mooney, 824 F.2d 192, 196 (2d Cir.1987).

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 5:23-cv-00731-BKS-ML    Document 7    Filed 12/21/23    Page 63 of 64

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

**CONCLUSION**

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 5:23-cv-00731-BKS-ML    Document 7    Filed 12/21/23    Page 64 of 64

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.    6